STATE OF NORTH CAROLINA, Plaintiff v. TERRY LAMONT BAGLEY, Defendant

No. COA06-686

(Filed 5 June 2007)

**1. Evidence— circumstances surrounding defendant's arrest—admissible**

There was no abuse of discretion in the prosecution of defendant for robbing and assaulting a marijuana supplier in the admission of evidence that defendant was found hiding in a closet in his home under blankets while police were searching for a person involved in another shooting. Testimony that defendant hid when police entered the building tended to show guilty conscience.

STATE v. BAGLEY

[183 N.C. App. 514 (2007)]

**2. Kidnapping— for the purpose of robbery—sufficiency of evidence**

The trial court correctly denied a motion to dismiss a charge of kidnapping for the purpose of committing robbery where defendant was found not guilty of robbing the kidnapping victim, but the evidence was that defendant kidnapped the victim to facilitate the robbery of a third person.

**3. Robbery— instructions—acting in concert—not arbitrary or unreasonable**

The trial court did not abuse its discretion by instructing the jury on acting in concert in an armed robbery prosecution where the State presented evidence that defendant chatted with a victim to throw him off guard before his accomplice pointed the gun, and that defendant used the accomplice's gun to rob another victim while the accomplice waited in the car.

**4. Assault— with a deadly weapon with intent to kill inflicting serious injury—sufficiency of evidence—firing two shots and wounding in leg**

The trial court did not err by denying defendant's motion to dismiss a charge of assault with a deadly weapon with intent to kill inflicting serious injury where defendant fired two shots at the victim, striking him once and causing him to be treated at a hospital and to suffer pain for two or three weeks.

**5. Assault— peremptory instruction—gunshot wound to leg as serious injury**

The trial court erred in a prosecution for assault with a deadly weapon with intent to kill inflicting serious injury by giving a peremptory instruction that a gunshot wound to the leg is a serious injury. On the evidence, reasonable minds could differ as to whether the injury was serious, and there was a reasonable possibility that the jury would have found that the injury was not serious.

Appeal by defendant from judgments entered 23 February 2006 by Judge A. Leon Stanback in Wake County Superior Court. Heard in the Court of Appeals 24 January 2007.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Jason T. Campbell, for the State.*

*Haral E. Carlin, for defendant-appellant.*

STROUD, Judge.

Defendant Terry Lamont Bagley appeals from judgments entered upon jury verdicts finding him guilty of robbery with a firearm, second-degree kidnapping, and assault with a deadly weapon inflicting serious injury (AWDWISI). Defendant contends that the trial court erred by: (1) denying his motion to dismiss the charge of kidnapping, (2) admitting evidence of the circumstances surrounding his arrest, (3) instructing the jury on the theory of acting in concert to commit robbery with a firearm, (4) denying his motion to dismiss the charge of AWDWISI, and (5) peremptorily instructing the jury that a gunshot wound to the leg is a serious injury.

We conclude that the State presented substantial evidence that defendant kidnapped J-Neaka Sutton, and affirm the order of the trial court denying defendant's motion to dismiss that charge. We conclude that the trial court did not err in admitting evidence of the circumstances surrounding defendant's arrest, including evidence that defendant was found hiding in a closet under a pile of clothes while police investigated a nearby shooting. We further conclude that the State presented sufficient evidence to support a jury instruction on the theory of acting in concert to commit robbery with a firearm; therefore, the trial court did not err in giving that instruction. Defendant received a fair trial, free of reversible error, for second-degree kidnapping and robbery with a firearm. Judgment is affirmed as to defendant's convictions for those offenses.

We further conclude that the State presented substantial evidence to support a jury finding that defendant assaulted Jamaal Turner with a deadly weapon inflicting serious injury, and affirm the order of the trial court denying defendant's motion to dismiss that charge. However, we conclude that the trial court committed reversible error by instructing the jury that a gunshot wound to the leg is a serious injury.[1] Therefore, we reverse defendant's conviction for assault with a deadly weapon inflicting serious injury and remand for a new trial on that charge.

## I. Background

The evidence in the record tends to show the following: Defendant Terry Lamont Bagley was a friend of William Harrington

---

1. Because we remand for a new trial on the basis of this instruction, we need not consider defendant's assignment of error to the trial court's instruction that a handgun is a deadly weapon.

and Courtney Bowens. J-Neaka Sutton was an occasional acquaintance of Harrington and a marijuana dealer. Jamaal Turner was Sutton's marijuana supplier. Turner supplied only customers he knew well and was very wary of strangers.

On 1 September 2004, defendant joined Harrington and Bowens to "chill." While "chilling," Harrington suggested that the three men rob Sutton. Defendant replied, "No, not today." Approximately twenty minutes later, the three men got up to walk across the street to a store named Kojak's. Crossing the street, they spotted Sutton's blue Buick parked near the store. Sutton sat in the driver's seat of the Buick and Derrick Perry, a friend of Sutton, sat in the passenger seat. Seeing Sutton in the Buick, Harrington said, "There go old boy [Sutton] right there."

The three men approached Sutton's car. After defendant and Harrington talked to Sutton for a short time, in order to "throw [Sutton] off guard," Harrington pointed a small chrome revolver at Sutton, and demanded "everything." Sutton removed some of his jewelry and money and gave it to Harrington. Sutton got out of the car, and defendant walked Sutton to the side of Kojak's store, where defendant took Sutton's shirt. Defendant and Sutton then returned to Sutton's car.

Defendant and Harrington forced Perry out of Sutton's car, then they got into the car with Sutton and Bowens. Sutton and Bowens offered inconsistent testimony at trial as to whether defendant or Harrington was holding the chrome revolver while the four men were in the car. However, the testimony of Sutton and Bowens was consistent that defendant and Harrington, working together, forced Sutton to call Turner and arrange a marijuana deal in order to entice Turner to meet them at a BP station on the other side of town. The testimony of Sutton and Bowens was also consistent that defendant and Harrington forced Sutton to drive Sutton's car to the BP station where Turner had agreed to meet Sutton.

When they arrived at a restaurant next to the BP station, the four men got out of the Buick. Harrington and Bowens got back in the Buick to be ready for a fast getaway, while defendant and Sutton walked together to Turner's car, a green Chrysler. Defendant and Sutton entered Turner's car, Sutton in the front passenger seat and defendant in the back seat. Inside the car, Turner handed Sutton a package of marijuana and requested payment.

Defendant then pointed the chrome revolver at Sutton and Turner, grabbed a book bag that contained currency and marijuana from the back seat, got out of the car, and began to run away. Turner got out of the car and chased defendant on foot. Defendant dropped the book bag during the chase, and Turner reached down to pick it up. When Turner reached down for the book bag, defendant fired two bullets from the chrome revolver at him. After firing the bullets, defendant re-joined Harrington and Bowens in Sutton's car. Harrington, with defendant and Bowens in the car, sped away to the east.

One of the bullets fired by defendant hit Turner, passing completely through his right leg. Turner testified that he did not immediately realize his leg had been hit by a bullet, but sensed only a "little sting" on impact. Turner refused assistance from a customer at the BP station. He carried the book bag approximately fifty feet to his car and then drove between two and three miles from the BP station to his home, where he opened a cabinet and hid the book bag containing currency and marijuana.

About a half hour after the shooting, Turner called a friend and asked to be driven to the hospital. On the way to the hospital, Turner and his friend saw an ambulance. Hoping to get a ride to the hospital in the ambulance, they followed it back to the BP station where Turner had been shot. When Turner arrived back at the BP station, Officer D.C. Davis of the Raleigh Police Department was conducting an investigation of the shooting. Turner limped over to where Officer D.C. Davis was standing and gave a brief statement about the shooting and the robbery which preceded it.

After giving his statement to Officer D.C. Davis, Turner requested treatment for his leg from the paramedics who had come in the ambulance. The paramedics treated Turner and then the ambulance transported Turner to the hospital where he stayed approximately two hours. Hospital staff "took an x-ray and then squirted some water on [the wound]" and "gave [Turner] some pain pills." Turner testified at trial that he suffered pain from the gunshot wound for two or three weeks, but had no long term effects from the injury.

On 21 September 2004, almost three weeks after the robbery and shooting described above, Officer Raymond Davis of the Raleigh Police Department responded to a shooting on Hay Lane. Officer Raymond Davis had information that a person involved in that shooting was inside the house located at 609 Hay Lane. Upon searching the house, Officer Raymond Davis found defendant in a bedroom

closet hiding under a pile of clothes, with marijuana in his pocket and a pistol nearby. Officer Raymond Davis arrested defendant.

On 25 October 2004, the Wake County Grand Jury indicted defendant for robbing Derrick Perry with a dangerous weapon, robbing J-Neaka Sutton with a dangerous weapon, second-degree kidnapping of J-Neaka Sutton, robbing Jamaal Turner with a dangerous weapon, and assaulting Jamaal Turner with a deadly weapon with intent to kill inflicting serious injury. Defendant was tried before a jury in Superior Court, Wake County, from 21 to 23 February 2006.

The jury found defendant guilty of: (1) second-degree kidnapping of Sutton, (2) robbing Turner with a firearm, and (3) assaulting Turner with a deadly weapon inflicting serious injury. Defendant was found not guilty of robbing Perry and Sutton with a firearm. Upon the jury verdict, the trial court sentenced defendant to consecutive sentences of 90 to 117 months for robbery with a dangerous weapon, 34 to 50 months for second-degree kidnapping, and 34 to 50 months for assault with a deadly weapon inflicting serious injury. Defendant appeals.

## II. Issues

On appeal, defendant first contends that the trial court erred when it denied his motions to dismiss for insufficient evidence the charges of second-degree kidnapping and AWDWISI. Second, defendant contends that he is entitled to a new trial on all charges because the trial court erroneously admitted prejudicial evidence. Third, defendant contends that he is entitled to a new trial on both the charge of robbery with a firearm and on the charge of AWDWISI because the trial court gave improper jury instructions.

## III. Error Assigned to Entire Trial

[1] Defendant argues that he is entitled to a new trial on all charges, because the trial court committed reversible error by admitting unfairly prejudicial evidence of the circumstances surrounding his arrest. We disagree.

A criminal defendant is entitled to a new trial if the trial court committed "reversible error which denied the defendant a fair trial conducted in accordance with law." N.C. Gen. Stat. § 15A-1447(a) (2005). Reversible error is present when "there is a reasonable pos-

sibility that, had the error in question not been committed, a different result would have been reached." *State v. Williams*, 322 N.C. 452, 456-57, 368 S.E.2d 624, 627 (1988) (citation omitted).

Defendant specifically contends that evidence that he was arrested after being found under a pile of clothes while the police were searching for a person involved in a shooting near his home was offered by the State as a bad act intended to prove the bad character of defendant and show that he acted in conformity with his character. At trial, the State contended that evidence of the circumstances surrounding defendant's arrest was offered as evidence of flight, not to show that defendant acted in conformity with bad character.

Evidence of bad acts other than the crime for which defendant is being tried must be excluded, even though relevant, if its only purpose is to show that defendant has the propensity or disposition to commit a similar crime. N.C.R. Evid. 404(b); *State v. Berry*, 356 N.C. 490, 505, 573 S.E.2d 132, 143 (2002). However, if evidence of other bad acts is offered for a purpose other than to show propensity or disposition to commit a similar crime and is otherwise relevant, it may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice." N.C.R. Evid. 403; *see, e.g., State v. Hutchinson*, 139 N.C. App. 132, 136-37, 532 S.E.2d 569, 572-73 (2000) (finding the admission of evidence of subsequent offenses relevant to defendant's intent and motive and not unfairly prejudicial).

A determination of admissibility under the balancing test of Rule 403 is within the sound discretion of the trial court. *State v. Wallace*, 104 N.C. App. 498, 504, 410 S.E.2d 226, 229 (1991), *disc. review denied and appeal dismissed*, 331 N.C. 290, 416 S.E.2d 398, *cert. denied*, 506 U.S. 915, 121 L. Ed. 2d 241 (1992). Such a determination will be disturbed only if it "is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *Hutchinson*, 139 N.C. App. at 137, 532 S.E.2d at 573 (citation omitted).

Flight is defined as leaving the scene of the crime and taking "steps to avoid apprehension." *State v. Levan*, 326 N.C. 155, 165, 388 S.E.2d 429, 434 (1990). Though flight is not one of the enumerated exceptions of Rule 404(b), those exceptions are examples and are not exclusive. N.C.R. Evid. 404(b); *State v. Bagley*, 321 N.C. 201, 206-07, 362 S.E.2d 244, 247-48 (1987).

Flight is a bad act which tends to show the character of defendant. *See, e.g.*, N.C. Gen. Stat. § 20-141.5(a) (2005) (criminalizing the operation of a motor vehicle while attempting to elude police). Reading Rule 404 and Rule 403 together with North Carolina's common law on flight, evidence of flight is inadmissible if it is meant to show the propensity of defendant to commit a crime similar to the one charged. On the other hand, evidence of flight is admissible if offered for the purpose of showing defendant's guilty conscience as circumstantial evidence of guilt of the crime for which he is being tried, *State v. King*, 343 N.C. 29, 468 S.E.2d 232 (1996) (running away from a police officer more than four months after the crime charged is admissible as circumstantial evidence to show consciousness of guilt), but even if offered for that purpose, it may be excluded if the danger of unfair prejudice substantially outweighs the probative value of the evidence, N.C.R. Evid. 404(b).

At trial, the State elicited the following testimony from the arresting officer, Raymond Davis:

Q. What was the nature of the call [on Hay Lane] that you were responding to?

A. A shooting call.

   . . .

Q. What was the reason [for] going in [the] residence [at 609 Hay Lane]?

A. I believe we had information that . . . a possible person involved in the shooting was inside the house.

Thereafter, defendant asked for a bench conference, on the record but outside the presence of the jury, to consider the admissibility of further evidence related to the circumstances surrounding his arrest. Defendant expressed concern that the State would elicit testimony that he was found under a pile of clothes, with marijuana in his pocket and with a pistol near his bed, and that such testimony would be meant only to show that defendant had a propensity to shoot people in order to get marijuana. After hearing from both sides, the trial court instructed the State not to ask about the pistol and the marijuana, but permitted the State to ask questions about defendant hiding under a pile of clothes. The jury returned, whereupon the State elicited further testimony from Officer Raymond Davis.

Q. Did you find . . . anyone inside [the] house [at 609 Hay Lane]?

A. We located [Terry Lamont Bagley] in one of the bedrooms in a closet [under a pile of] clothes.

. . .

Q. Is it a correct statement that . . . Mr. Bagley was not charged in any way with the assault that occurred out on Hay Lane?

. . .

A. That is not the one I was dealing with.

Q. And after Mr. Bagley was found in that closet under the clothes, was he then placed into custody?

A. Yes.

We conclude that the trial court did not abuse its discretion by admitting evidence of the circumstances surrounding defendant's arrest. The transcript shows that the trial court carefully considered each part of the officer's testimony. The trial court did not allow testimony that defendant was found with marijuana and a pistol, which it considered to be unfairly prejudicial in a trial for robbing and shooting a marijuana supplier. However, the trial court did allow testimony that defendant hid when police entered the building he was in. This evidence tended to show defendant's guilty conscience, a type of evidence which the North Carolina Supreme Court has found to be probative as circumstantial evidence of guilt and not unfairly prejudicial. *King*, 343 N.C. at 40, 468 S.E.2d at 239. Neither the substance of this evidence, nor the careful procedure by which the trial court considered this evidence outside the presence of the jury, suggests that the trial court made an arbitrary or unreasonable decision. Accordingly, we find no error in the admission of evidence of the circumstances surrounding defendant's arrest.

## IV. Kidnapping

[2] Defendant contends that the trial court erred when it denied his motion to dismiss the kidnapping charge for insufficient evidence. However, we find that the State presented substantial evidence to support a jury finding that defendant kidnapped J-Neaka Sutton. Therefore, we affirm the order of the trial court denying defendant's motion to dismiss the kidnapping charge.

N.C. Gen. Stat. § 15A-1227 (2005) allows a defendant to move to dismiss a criminal charge when the evidence is not sufficient to sus-

STATE v. BAGLEY

[183 N.C. App. 514 (2007)]

tain a conviction. Evidence is sufficient to sustain a conviction when, viewed "in the light most favorable to the State" and giving the State "every reasonable inference" therefrom, *State v. Locklear*, 322 N.C. 349, 358, 368 S.E.2d 377, 383 (1988), there is substantial evidence "to support a [jury] finding," *id.*, 368 S.E.2d at 383, of "each essential element of the offense charged," and of "defendant's being the perpetrator of such offense," *State v. Scott*, 356 N.C. 591, 595, 573 S.E.2d 866, 868 (2002) (citation omitted). The denial of a motion to dismiss for insufficient evidence is a question of law, *State v. Vause*, 328 N.C. 231, 236, 400 S.E.2d 57, 61 (1991), which this Court reviews *de novo*, *Shepard v. Ocwen Fed. Bank, FSB*, 172 N.C. App. 475, 478, 617 S.E.2d 61, 64 (2005).

The essential elements of kidnapping relevant to the case *sub judice* are: (1) restraint or removal of a person from one place to another, (2) without that person's consent, (3) for the purpose of facilitating the commission of any felony. N.C. Gen. Stat. § 14-39(a) (2005). If the defendant is also charged with the felony underlying the kidnapping charge, the double jeopardy clause of the Fifth Amendment prohibits a conviction for kidnapping if the restraint or removal is merely an inherent part of the felony, rather than a separate and distinct action. *State v. Irwin*, 304 N.C. 93, 103, 282 S.E.2d 439, 446 (1981). In *Irwin*, the North Carolina Supreme Court reversed a conviction for kidnapping because the only evidence that the defendant removed or restrained his victim was that the defendant forced the victim to go to the back of the store to open the safe during the course of an armed robbery. 304 N.C. at 103, 282 S.E.2d at 446. *Irwin* held that "mere technical asportation" inherent in the armed robbery itself was not sufficient to also convict the defendant of a separate kidnapping charge. 304 N.C. at 103, 282 S.E.2d at 446.

In his motion to dismiss, defendant argued that the State failed to present evidence that Sutton was removed or restrained for the purpose of committing a felony. Specifically, defendant offers the following syllogism: Armed robbery was the felony alleged in the indictment charging defendant with kidnapping Sutton. Defendant was found not guilty of robbing Sutton with a firearm. Therefore, the State did not present evidence of facilitation of a felony sufficient to support the kidnapping charge, and the trial court should have granted defendant's motion to dismiss the kidnapping charge.

Alternatively, defendant argues that even if there was substantial evidence of armed robbery, the State did not present evidence that defendant's restraint and removal of Sutton was a separate and dis-

tinct act not merely an inherent part of the armed robbery. Defendant therefore concludes that the trial court should have granted his motion to dismiss the kidnapping charge in order to protect his Fifth Amendment right to be free from double jeopardy.

It is of no moment that defendant was found not guilty of robbing J-Neaka Sutton with a firearm. The indictment alleged that defendant kidnapped Sutton to facilitate the felony of armed robbery; it did not allege that Sutton was the victim of the armed robbery. To the contrary, the evidence shows that defendant kidnapped Sutton for the singular purpose of robbing Jamaal Turner. Defendant forced Sutton to drive to the other side of town in order to use Sutton as a decoy to facilitate the robbery of Turner. The robbery of Turner could not have occurred without the kidnapping of Sutton. This is substantial evidence that defendant removed and restrained Sutton for the purpose of committing the felony of armed robbery. It is also substantial evidence that the restraint and removal of Sutton was far more than mere technical asportation inherent in that armed robbery. The trial court did not err in denying defendant's motion to dismiss the kidnapping charge for insufficient evidence.

### V. Robbery with a Firearm

[3] Defendant argues that he is entitled to a new trial on the charge of robbery with a firearm because the trial court erred by instructing the jury on the theory of acting in concert to commit robbery with a firearm. Defendant contends that because he said, "No, not today," when asked about robbing Sutton, and because the State presented no evidence that defendant acted in concert with anyone to commit robbery with a firearm, instructing the jury on acting in concert was error. We disagree.

This Court reviews jury instructions only for abuse of discretion. *State v. Shepherd*, 156 N.C. App. 603, 607, 577 S.E.2d 341, 344 (2003). Abuse of discretion means "manifestly unsupported by reason or . . . so arbitrary that it could not have been the result of a reasoned decision." *Hutchinson*, 139 N.C. App. at 137, 532 S.E.2d at 573 (citation omitted). Jury instructions must be supported by the evidence. *State v. Dammons*, 293 N.C. 263, 272, 237 S.E.2d 834, 840 (1977). Conversely, all essential issues arising from the evidence require jury instructions. *State v. Owen*, 111 N.C. App. 300, 307, 432 S.E.2d 378, 383 (1993). To support an instruction of acting in concert, the State must present evidence that the defendant is "present at the scene of the crime" and acts "together with another who does the acts neces-

sary to constitute the crime pursuant to a common plan or purpose to commit the crime." *State v. Joyner*, 297 N.C. 349, 357, 255 S.E.2d 390, 395 (1979).

Evidence that defendant said, "No, not today," when Harrington asked if defendant wanted to rob Sutton is not dispositive as to whether the evidence supported a jury instruction on the theory of acting in concert to commit armed robbery. To the contrary, after reviewing the entire record, we conclude that the State presented sufficient evidence to support a jury instruction that defendant and Harrington acted in concert to rob Sutton. In particular, defendant was present with Harrington at Kojak's store when Harrington robbed Sutton at gunpoint. Defendant chatted with Sutton to throw him off guard before Harrington pointed the gun at Sutton. Defendant stole Sutton's clothes right after Harrington had threatened Sutton with the gun.

Additionally, the State presented evidence, sufficient to support a jury instruction, that defendant acted in concert with Harrington to rob Turner. Defendant and Harrington went together to the BP station where Turner was robbed. Defendant used Harrington's gun to rob Turner. Harrington sat in the getaway car and waited while defendant robbed Turner, then they left the crime scene together. On this evidence, the trial court's decision to instruct the jury on the theory of acting in concert was not arbitrary or unreasonable. Therefore, the trial court did not abuse its discretion when it instructed the jury on the theory of acting in concert. Accordingly, we find no error in the instruction.

## VI. AWDWISI

[4] Defendant contends that the trial court erred when it denied his motion to dismiss the charge of assault with a deadly weapon with the intent to kill and inflicting serious injury (AWDWIKISI)[2] for insufficient evidence. Alternatively, defendant contends that the trial court erred by peremptorily instructing the jury that a gunshot wound to the leg is a serious injury.

As stated above, N.C. Gen. Stat. § 15A-1227 (2005) allows a defendant to move to dismiss a criminal charge when the evidence is not sufficient to sustain a conviction. Evidence is sufficient to sustain a conviction when, viewed "in the light most favorable to the State"

---

2. Defendant was indicted for AWDWIKISI but the jury found defendant guilty only of the lesser included offense of AWDWISI.

and giving the State "every reasonable inference" therefrom, *Locklear*, 322 N.C. at 358, 368 S.E.2d at 382, there is substantial evidence "to support a [jury] finding," *id.*, 368 S.E.2d at 383, of "each essential element of the offense charged" and of "defendant's being the perpetrator of such offense," *Scott*, 356 N.C. at 595, 573 S.E.2d at 868 (citation omitted). The denial of a motion to dismiss for insufficient evidence is a question of law, *Vause*, 328 N.C. at 236, 400 S.E.2d at 61, which this Court reviews *de novo*, *Shepard*, 172 N.C. App. at 478, 617 S.E.2d at 64.

"The elements of AWDWISI are: (1) an assault, (2) with a deadly weapon, (3) inflicting serious injury . . . not resulting in death." *State v. Jones*, 353 N.C. 159, 164, 538 S.E.2d 917, 922 (2000) (citing N.C. Gen. Stat. § 14-32(b) (1999)). Assault is "an overt act or attempt, with force or violence, to do some immediate physical injury to the person of another, which is sufficient to put a person of reasonable firmness in fear of immediate physical injury." *State v. Porter*, 340 N.C. 320, 331, 457 S.E.2d 716, 721 (1995). A deadly weapon is "any article, instrument or substance which is likely to produce death or great bodily harm." *State v. Sturdivant*, 304 N.C. 293, 301, 283 S.E.2d 719, 725 (1981). A pistol or a revolver is a deadly weapon *per se*. *State v. Pettiford*, 60 N.C. App. 92, 98, 298 S.E.2d 389, 392 (1982).

Serious injury is "physical or bodily injury resulting from an assault with a deadly weapon," *State v. James*, 321 N.C. 676, 688, 365 S.E.2d 579, 586 (1988), but serious injury has not been defined with specificity for the purposes of AWDWISI, *State v. Ezell*, 159 N.C. App. 103, 110, 582 S.E.2d 679, 684 (2003). This is because whether an injury is serious within the meaning of AWDWISI is usually a factual determination that rests with the jury. *State v. Woods*, 126 N.C. App. 581, 592, 486 S.E.2d 255, 261 (1997). Substantial evidence of a serious injury that is sufficient to survive a motion to dismiss includes, but is not limited to, evidence of "hospitalization, pain, blood loss, and time lost at work." *Id.*; *see also James*, 321 N.C. at 688, 365 S.E.2d at 587.

The evidence, viewed in the light most favorable to the State and giving the State every reasonable inference therefrom, is as follows: Defendant fired two bullets at Jamaal Turner. This is substantial evidence of an overt attempt to do immediate physical injury which would have put a person of reasonable firmness in fear of immediate physical injury. The bullets were fired from a revolver, which is a deadly weapon *per se* in North Carolina. One of the bullets defendant fired at Turner went completely through Turner's right leg. After suffering the bullet wound, Turner's leg hurt too badly to drive himself

to the hospital. He was treated at the hospital for the wound and suffered pain for two or three weeks afterwards. This is substantial evidence to support a jury finding that defendant inflicted a serious injury on Turner. Because the state presented substantial evidence on all three elements of AWDWISI, we hold that the trial court did not err in denying defendant's motion to dismiss that charge.

[5] Finally, we consider defendant's argument that the trial court erred by peremptorily instructing the jury that a gunshot wound to the leg is a serious injury. Defendant properly objected to this instruction during the charge conference and then renewed his objection after the charge to the jury was given. In exceptional cases, the trial court may remove the element of serious injury from consideration by the jury by peremptorily declaring the injury to be serious. *State v. Hedgepeth*, 330 N.C. 38, 53-54, 409 S.E.2d 309, 318 (1991). However, such a declaration is appropriate only when the evidence "is not conflicting and is such that reasonable minds could not differ as to the serious nature of the injuries inflicted." *Id.* (quoting *State v. Pettiford*, 60 N.C. App. 92, 97, 298 S.E.2d 389, 392 (1982)); *State v. Owens*, 65 N.C. App. 107, 308 S.E.2d 494 (1983) (concluding that reasonable minds could differ as to the seriousness of a gunshot wound to the arm which required hospitalization for only three hours).

We concluded above that the record contained substantial evidence to support a jury finding that defendant inflicted a serious injury on Turner. The record also contains the following evidence which suggests that the injury was not serious: After sustaining the bullet wound, Turner refused help from a passerby at the scene, carried a book bag containing currency and marijuana fifty feet to his car, drove home, and stored the book bag in a cabinet. Turner then waited almost a half hour, without seeking treatment, before asking a friend for a ride to the hospital. After starting for the hospital, Turner changed his mind and returned to the crime scene instead, where he gave a statement to police before asking a paramedic at the scene for treatment of the bullet wound. When Turner finally arrived at the hospital, the staff took x-rays of the wound, "squirted water on it," gave him pain pills, and released him after about two hours. Turner has no on-going difficulties from the wound.

We conclude that on this evidence, reasonable minds could differ as to whether Turner's injury was serious, and the trial court erroneously gave a peremptory instruction to the jury that the gunshot wound to Turner's leg was serious. This instruction was error.

**STATE v. BAGLEY**

[183 N.C. App. 514 (2007)]

Having concluded that the trial court erred by instructing the jury that a gunshot wound to the leg is a serious injury, we now consider if it was reversible error which entitles defendant to a new trial. On the evidence presented, we hold that there is a reasonable possibility that the jury would have found the injury was not serious. If the jury had found the injury not to be serious, it probably would have found defendant not guilty of AWDWISI. This result is different from the guilty verdict reached by the jury in defendant's trial for AWDWISI. The error was therefore reversible, and defendant is entitled to a new trial. Accordingly, we reverse defendant's conviction for AWDWISI, and remand for a new trial on this charge.

## VII. Conclusion

We conclude that the State presented substantial evidence that defendant kidnapped J-Neaka Sutton, and affirm the order of the trial court denying defendant's motion to dismiss that charge. We conclude that the trial court did not err in admitting evidence of the circumstances surrounding defendant's arrest, including evidence that defendant was found hiding in a closet under a pile of clothes while police investigated a nearby shooting. We further conclude that the State presented sufficient evidence to support a jury instruction on the theory of acting in concert to commit robbery with a firearm; therefore, the trial court did not err in giving that instruction. Defendant received a fair trial, free of reversible error, for second-degree kidnapping and robbery with a firearm. Judgment is affirmed as to defendant's convictions for those offenses.

We also conclude that the State presented substantial evidence to support a jury finding that defendant assaulted Jamaal Turner with a deadly weapon inflicting serious injury, and affirm the order of the trial court denying defendant's motion to dismiss that charge. However, we hold that the trial court committed reversible error by peremptorily instructing the jury that a gunshot wound to the leg is a serious injury. Therefore, we reverse defendant's conviction for assault with a deadly weapon inflicting serious injury and remand for a new trial on that charge.

NO ERROR IN PART, REVERSED IN PART, AND REMANDED FOR NEW TRIAL ON 04 CRS 074558.

Judges TYSON and STEPHENS concur.