An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 15-469

Filed: 20 October 2015

Wake County, No. 12 CRS 227492

STATE OF NORTH CAROLINA

v.

MICHAEL PAUL DAMATO

Appeal by defendant from judgment entered 24 November 2014 by Judge James E. Hardin, Jr., in Wake County Superior Court. Heard in the Court of Appeals 28 September 2015.

> *Attorney General Roy Cooper, by Special Deputy Attorney General E. Burke Haywood, for the State.*

> *Law Office of Aaron Young, PLLC, by Aaron Young, for defendant-appellant.*

INMAN, Judge.

Defendant appeals from a judgment entered upon his conviction of impaired driving under N.C. Gen. Stat. § 20-138.1 (2013). The trial court imposed a Level Two punishment sentencing defendant to twelve months in the custody of the Division of Adult Correction. We hold that defendant received a fair trial free from prejudicial error.

The State's evidence tended to show that defendant operated a dark-colored Ford Mustang on U.S. Highway 401, a public highway in North Carolina, on the morning of 8 December 2012. Trooper Kurt Mills of the North Carolina State Highway Patrol testified that at approximately 2:40 a.m. on 8 December 2012, he observed defendant's vehicle straddling the center line of U.S. Highway 401 at a speed of 70 miles per hour near the Buffaloe Lanes in Wake County. The speed limit at this location is 55 miles per hour. After watching the vehicle for "roughly 30 seconds[,]" Trooper Mills pulled his marked patrol car onto the highway, activated his lights and siren, and attempted to conduct a traffic stop. He pursued defendant for approximately one mile and "had to accelerate to and beyond" 70 miles per hour in order to catch up to the Mustang. During the pursuit, Trooper Mills saw defendant "r[u]n off the road across the [right side line] approximately two feet." Defendant's vehicle continued to weave within its lane and crossed over the white fog line by "inches" on two more occasions before coming to a stop near Simpkins Road.

Trooper Mills parked behind the Mustang and exited his patrol car. As he approached defendant's driver's side window, he touched the rear of the Mustang with his fingertips, whereupon it began moving forward. Trooper Mills stopped walking and ordered defendant "to stop the vehicle and put it in park[.]" Defendant complied and turned off his car's engine. As Trooper Mills proceeded to defendant's

window, he "noticed that there was fresh grass stuck between the tire and the rim on the left front of the vehicle."

Advised that he had been speeding, defendant "yelled out" at Trooper Mills "that he wasn't speeding" and had been stopped for no reason. Defendant further stated "that he had wrecked his car a couple of days earlier and it was not driving correctly[.]" Trooper Mills saw no apparent damage to defendant's vehicle other than "the grass in the rim of it." Engaging defendant through the car window, Trooper Mills "immediately smelled a strong odor of alcohol coming from the vehicle" and subsequently "smelled [alcohol] coming from [the defendant's] breath[.]" Defendant's eyes were red and glassy. When asked for his driver's license, defendant appeared "unable to control his hands" and "was just kind of fumbling for his license" before he was able to produce it.

Trooper Mills next asked defendant how much he had to drink. Defendant denied consuming any alcohol and became "very agitated[,]" clenching his fist and teeth. Defendant continued to yell at Trooper Mills, refusing to submit to a portable breath test and refusing a request to step out of his vehicle. Because of defendant's increasing anger, Trooper Mills contacted a dispatcher to request a back-up unit. He then ordered defendant out of the car. Defendant replied, "F*** you, . . . I want to speak with your supervisor."

Trooper Mills insisted that defendant exit the vehicle. In response, defendant "lunged to his right and bladed his hands towards the center console, and his hands went out of sight[.]" Trooper Mills drew his service weapon, pointed it at defendant, and demanded to see his hands. Defendant became compliant and appeared to calm down. Trooper Mills holstered his weapon, opened defendant's car door, and again ordered him outside. When defendant did not comply, Trooper Mills reached for his left arm in order to extract him. Defendant lunged and swung at Trooper Mills with his right fist, saying "F*** you. I'm not getting out of the vehicle[.]" Trooper Mills deployed his taser in defendant's left thigh. After being tased, defendant got out of his car and submitted to arrest. While searching and handcuffing defendant, Trooper Mills "continued to smell the strong odor of alcohol coming from his breath."

Defendant remained non-cooperative and "very agitated" while being processed at the jail. Trooper Mills took defendant to the "intox room" and requested that he submit to an intoxilyzer test. Defendant was advised of his rights related to chemical analysis but refused to sign the notice of rights form. Defendant asked to contact a lawyer and made a telephone call with a deputy's phone. He remained agitated in the intox room, "talking out loud [and] punching the seat in an aggravated rage." On three occasions, defendant asked Trooper Mills what had happened to his phone, seemingly unable to recall what he had been told. After 30 minutes elapsed without the arrival of his attorney or witness, defendant refused the intoxilyzer.

## Discussion

On appeal, defendant claims the trial court erred by denying his motion to dismiss the charge of impaired driving at the conclusion of the evidence. Specifically, he argues that "the State did not present substantial evidence that [he] was driving while impaired" on the morning of 8 December 2012, as required to sustain a conviction under N.C. Gen. Stat. § 20-138.1(a)(1) (2013). We disagree.

We review the trial court's denial of a motion to dismiss for insufficient evidence *de novo*. *State v. Bagley*, 183 N.C. App. 514, 523, 644 S.E.2d 615, 621 (2007) (citations omitted). We must determine whether the State presented substantial evidence that defendant committed each essential element of the charged offense. *Id.* Substantial evidence is "that amount of relevant evidence necessary to persuade a rational juror to accept a conclusion." *State v. Scott*, 356 N.C. 591, 597, 573 S.E. 2d 866, 869 (2002). In ruling on a motion to dismiss, we "view the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences." *State v. Benson*, 331 N.C. 537, 544, 417 S.E. 2d 756, 761 (1992) (citation omitted).

"Before defendant can be convicted under N.C. Gen. Stat. § 20-138.1(a)(1), the State must prove beyond a reasonable doubt that defendant had ingested a sufficient quantity of an impairing substance to cause his faculties to be appreciably impaired." *State v. Phillips*, 127 N.C. App. 391, 393, 489 S.E.2d 890, 891 (1997) (citation omitted). "Our Supreme Court has held that 'the [f]act that a motorist has been

drinking, when considered in connection with faulty driving . . . or other conduct indicating an impairment of physical or mental faculties, is sufficient *prima facie* to show a violation of G.S. 20-138.'" *State v. Coffey*, 189 N.C. App. 382, 387, 658 S.E.2d 73, 76 (2008) (quoting *Atkins v. Moye*, 277 N.C. 179, 185, 176 S.E.2d 789, 794 (1970)). Moreover,

> [a]n officer's opinion that a defendant is appreciably impaired is competent testimony and admissible evidence when it is based on the officer's personal observation of an odor of alcohol and of faulty driving or other evidence of impairment. The refusal to submit to an intoxilyzer test also is admissible as substantive evidence of guilt on a DWI charge.

*State v. Gregory*, 154 N.C. App. 718, 721, 572 S.E.2d 838, 840 (2002) (citations omitted); *see also* N.C. Gen. Stat. § 20-139.1(f) (2013).

We find substantial evidence of defendant's impairment in this case. Prior to executing the vehicle stop, Trooper Mills observed defendant's car straddling the highway's center line while traveling fifteen miles per hour over the speed limit and then cross the outside white line of its lane of travel three times. Defendant initially failed to secure his vehicle in a parked position and was belligerent and aggressive toward Trooper Mills throughout their encounter. Defendant's breath smelled strongly of alcohol, his eyes were red and glassy, and he struggled to produce his driver's license. Based on the totality of his observations, Trooper Mills formed the opinion that defendant's faculties were appreciably impaired by alcohol. Defendant's

refusal to submit to a chemical analysis of his blood alcohol level constitutes additional evidence of his impairment under N.C. Gen. Stat. § 20-139.1(f). His argument is overruled.

Defendant also claims the trial court erred by denying his motion for a mistrial following his outburst in open court in front of the jury. During Trooper Mill's testimony, defendant addressed the State's witness directly by claiming, "You tased me." The trial court paused the proceedings and excused the jury from the courtroom. Before the jury could leave, however, defendant addressed Trooper Mills as follows: "You tased me for asking for your superior. I ain't going to keep my mouth shut. You're lying." Defendant continued his protest in the jury's absence, telling the trial court, *inter alia*, "I hope there's rightful justice here[,]" and "I'm getting blamed for something I didn't do." Although the court denied defendant's subsequent request for a mistrial, it instructed jurors upon their return to the courtroom to "please disregard the actions and demonstrations by the defendant just prior to your departure a few minutes ago."

Under N.C. Gen. Stat. § 15A-1061 (2013), the trial court "must declare a mistrial upon the defendant's motion if there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, resulting in substantial and irreparable prejudice to the defendant's case." *Id.* We review the

denial of a defendant's motion for mistrial only for abuse of discretion. *State v. Maness*, 363 N.C. 261, 288, 677 S.E.2d 796, 813 (2009).

We find no abuse of discretion here. "It is well established that arguments for a mistrial do not carry great weight when the grounds relied upon arise from a defendant's own misconduct. . . . [I]f defendant was prejudiced in the eyes of the jury by his own misconduct, he cannot be heard to complain." *State v. Joiner*, __ N.C. App. __, __, 767 S.E.2d 557, 565 (2014) (citations and internal quotation marks omitted); *see also* N.C. Gen. Stat. § 15A-1443(c) (2013). Having provided a timely curative instruction, the trial court acted well within its discretion to deny defendant's motion for a mistrial.

## Conclusion

For the foregoing reasons, we conclude that defendant's trial was free of error.


NO ERROR.

Judges STROUD and DAVIS concur.

Report per Rule 30(e).