MURPHY, Judge.
 

 *361
 
 The issue underlying Maurice Jason Webb-Sholar's
 
 [1]
 
 (Defendant) arguments on appeal is whether the State put forth sufficient substantial evidence that he
 
 personally
 
 committed the crimes appealed herein. For the reasons that follow, we hold that this case is analogous to
 
 State v. Ethridge
 
 ,
 
 168 N.C. App. 359
 
 ,
 
 607 S.E.2d 325
 
 (2005), and, thus, there
 
 *362
 
 was sufficient evidence that Defendant perpetrated the crimes to support a jury finding, of each essential element of the offense
 
 *184
 
 charged, and of Defendant being the perpetrator of each offense.
 

 Defendant argues that: (1) there was insufficient evidence that Defendant personally committed the offenses of felony breaking or entering, felony larceny, and misdemeanor injury to real property, and, thus, it was error for the trial court to deny Defendant's motion to dismiss; and (2) as a result of this error, the trial court plainly erred in its jury instructions on felonious larceny. We disagree, and analyze each argument in turn.
 

 Background
 

 During Fall 2015, Defendant introduced himself to Lasonia Melvin as "Jason Young." The two dated "casually" for about one month. Defendant visited her apartment several times throughout the relationship, which was located on the ground floor of an apartment complex in Wilmington.
 

 Defendant asked Melvin about her plans for Thanksgiving. Melvin told Defendant that she and her daughter were traveling out of town. When Defendant asked to accompany Melvin on this trip, she declined. Shortly thereafter, Melvin ended the relationship because Defendant was always asking for money, although Defendant told Melvin he had a job.
 

 The day before Thanksgiving, Melvin and her daughter left her apartment at approximately 5:00 p.m. for their trip out of town. Melvin locked the apartment door when she left, and asked a neighbor, Henrietta McKoy, to watch her apartment. McKoy lived across the parking lot from Melvin. Between 10:00 p.m. and 11:00 p.m., McKoy saw a dark blue or black vehicle backed into the parking space where Melvin parks. At the time, McKoy thought the car belonged to Melvin. McKoy went outside a second time, approximately 30 minutes after first seeing the vehicle, and the vehicle was still parked in the same space.
 

 Around the same time, another neighbor, Matthew Lofty (Lofty), sat outside on his porch, directly above Melvin's apartment. Throughout the night, Lofty saw a four-door, dark blue Hyundai parked and backed into Melvin's parking spot, with the trunk facing Melvin's apartment. Lofty saw Defendant and another unidentified male near Melvin's apartment. Lofty observed Defendant twice that evening: first standing in the parking lot, and second, standing directly in front of Melvin's apartment door. Lofty also noted he saw the unidentified male in the area each time he looked down from the porch. Lofty told police that he saw the
 
 *363
 
 unidentified male and Defendant going in and out of the apartment.
 
 [2]
 
 Lofty also stated that, sometime during the night, he saw a flat screen television in the open trunk of the dark blue Hyundai.
 

 Heather Wilson (Wilson), who lived with Lofty, exchanged brief pleasantries with Defendant as she smoked on the upstairs porch. Wilson thought Defendant seemed nervous during this exchange. Wilson claimed the sunroof and trunk were open on the vehicle, and that she saw "stuff" in the trunk on at least one occasion.
 

 Over the course of roughly three hours, Lofty observed Defendant and the unidentified male went to and from Melvin's residence four to five times in the dark blue Hyundai. During one of these visits, as Lofty and Wilson watched, Defendant noticed he was being observed, appeared "startled," slammed the trunk closed, entered the passenger side of the vehicle, and slowly pulled out of the parking lot. Both Lofty and Wilson heard a lot of noise throughout the night and would look outside, but could not identify its source.
 

 The next day Wilson and Lofty noticed the door to Melvin's apartment was open, and alerted McKoy, who called the police. When Officer Carly Tate of the Wilmington Police Department arrived on scene, she noticed Melvin's door frame was broken and appeared to have been pried open. Officer Tate entered the apartment and noticed several items were missing or had been "disturbed."
 

 *185
 
 Melvin later determined that three TVs (one of which was an older, 55-inch model), a sapphire diamond bracelet, a microwave, two laptops (including her work laptop), an Amazon Fire Stick, several DVDs, and $900 dollars in cash were missing. Melvin's insurance company valued her stolen items at approximately $4,000, and paid her roughly $3,000 after a $1,000 deductible. Sometime later Wilson picked Defendant out of a photo lineup, and Lofty also identified Defendant as the perpetrator.
 

 During the trial, Defendant made a motion to dismiss at the close of the State's evidence, and renewed his motion to dismiss at the close of all evidence. The trial court denied both motions. The trial court instructed the jury on the charges of felony breaking or entering, felony larceny, and misdemeanor injury to real property. The jury subsequently returned a verdict of guilty on all counts. The trial court entered judgments upon
 
 *364
 
 the verdicts and sentenced Defendant to 11 to 23 months of imprisonment for each felony conviction, consolidated; and a consecutive term of 120 days imprisonment for the injury to real property conviction. Defendant timely appealed in open court.
 

 Analysis
 

 Defendant presented two arguments on appeal: (1) there was insufficient evidence that Defendant personally committed the offenses of felony breaking or entering, felony larceny, and misdemeanor injury to real property, and, thus, it was error for the trial court to deny Defendant's motion to dismiss; and (2) as a result of this error, the trial court plainly erred in its jury instructions on felonious larceny. We disagree and hold that Defendant received a fair trial, free from error.
 

 A. Motions to Dismiss
 

 Defendant argues the State presented insufficient evidence he
 
 personally
 
 broke into or entered Melvin's apartment,
 
 personally
 
 committed larceny, or
 
 personally
 
 injured the apartment door.
 

 We review the denial of a motion to dismiss for insufficient evidence de novo.
 
 State v. Bagley
 
 ,
 
 183 N.C. App. 514
 
 , 523,
 
 644 S.E.2d 615
 
 , 621 (2007).
 

 Evidence is sufficient to sustain a conviction when, viewed in the light most favorable to the State and giving the State every reasonable inference therefrom, there is substantial evidence to support a jury finding, of each essential element of the offense charged, and of defendant's being the perpetrator of such offense.
 

 Id.
 
 at 523,
 
 644 S.E.2d at 621
 
 (citations, quotation marks, and alterations omitted).
 

 "Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied."
 
 State v. Fritsch
 
 ,
 
 351 N.C. 373
 
 , 378,
 
 526 S.E.2d 451
 
 , 455 (2000) (citation omitted). "In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor."
 
 State v. Rose
 
 ,
 
 339 N.C. 172
 
 , 192,
 
 451 S.E.2d 211
 
 , 223 (1994),
 
 cert. denied
 
 ,
 
 515 U.S. 1135
 
 ,
 
 115 S.Ct. 2565
 
 ,
 
 132 L.Ed.2d 818
 
 (1995).
 

 *365
 
 Circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence. If the evidence presented is circumstantial, the court must consider whether a reasonable inference of defendant's guilt may be drawn from the circumstances. Once the court decides that a reasonable inference of defendant's guilt may be drawn from the circumstances, then it is for the jury to decide whether the facts, taken singly or in combination, satisfy it beyond a reasonable doubt that the defendant is actually guilty.
 

 Fritsch
 
 ,
 
 351 N.C. at 379
 
 ,
 
 526 S.E.2d at 455
 
 (quotation marks, citations, brackets, and emphasis omitted).
 

 Here, at the State's request, the trial court did not instruct the jury on acting in concert or aiding and abetting. Thus, in order for the jury to find Defendant guilty of felony breaking and entering, felony larceny, and misdemeanor
 
 *186
 
 injury to real property, "the State was required to prove that defendant committed the offenses himself."
 
 State v. Haymond
 
 ,
 
 203 N.C. App. 151
 
 , 168,
 
 691 S.E.2d 108
 
 , 122 (2010)
 
 ; see also
 

 State v. McCoy
 
 ,
 
 79 N.C. App. 273
 
 , 274,
 
 339 S.E.2d 419
 
 , 420 (1986) ("The court failed to instruct on acting in concert. Accordingly, defendant's conviction may be upheld only if the evidence supports a finding that he personally committed each element of the offense.").
 
 [3]
 

 The jury convicted Defendant of felonious breaking or entering, felonious larceny, and injury to real property. The elements of felonious breaking or entering are: "(1) the breaking or entering (2) of any building (3) with the intent to commit any felony or larceny therein."
 
 State v. Litchford
 
 ,
 
 78 N.C. App. 722
 
 , 725,
 
 338 S.E.2d 575
 
 , 577 (1986) ;
 
 see also
 
 N.C.G.S. § 14-54(a) (2017). For larceny, the State must prove Defendant: "(1) took the property of another; (2) carried it away; (3) without the owner's consent; and (4) with the intent to deprive the owner of his property permanently."
 

 *366
 

 State v. Perry
 
 ,
 
 305 N.C. 225
 
 , 233,
 
 287 S.E.2d 810
 
 , 815 (1982) ;
 
 see also
 
 N.C.G.S. § 14-72 (2017). The State charged Defendant with felonious larceny, alleging he took property worth more than $1,000 or acted pursuant to a breaking or entering.
 
 See
 
 N.C.G.S. § 14-72(a), (b)(2). It is a misdemeanor to "willfully and wantonly damage, injure or destroy any real property whatsoever, either of a public or private nature[.]" N.C.G.S. § 14-127 (2017).
 

 Defendant cites to
 
 State v. Cunningham
 
 ,
 
 140 N.C. App. 315
 
 ,
 
 536 S.E.2d 341
 
 (2000), in support of his argument. In
 
 Cunningham
 
 , the defendant was convicted of first-degree burglary.
 
 Id.
 
 at 320,
 
 536 S.E.2d at 345
 
 . On appeal, Cunningham argued the State failed to present sufficient evidence to support the charge.
 
 Id.
 
 at 320,
 
 536 S.E.2d at 346
 
 . The trial court did not instruct the jury as to acting in concert, and, thus, we reviewed for sufficient evidence that Cunningham personally committed the crime.
 
 Id.
 
 at 321-22,
 
 536 S.E.2d at 345
 
 .
 

 When reviewing the evidence in
 
 Cunningham
 
 , we noted, "[t]he only evidence with regard to the alleged burglary came from two sources: (1) defendant's own confession ... and (2) the testimony of Sherry Atwell, the owner of the house and daughter of the victim[.]"
 
 Id.
 
 at 322,
 
 536 S.E.2d at 346
 
 . In Cunningham's confession, he did not admit "he broke down or otherwise opened any of the exterior or interior doors."
 
 Id.
 
 at 322,
 
 536 S.E.2d at 347
 
 . Indeed, the confession stated another person with Cunningham kicked the door and opened it.
 
 Id.
 
 at 322,
 
 536 S.E.2d at 346
 
 . The State asked us to accept certain portions of Cunningham's confession-that he carried a shotgun-and reject the portions of his confession implicating another for the breaking.
 
 Id.
 
 at 322,
 
 536 S.E.2d at 347
 
 . The State also pointed to Atwell's testimony, but her testimony only supported constructive breaking, a theory upon which the jury was not instructed.
 
 Id.
 
 at 324,
 
 536 S.E.2d at 347-48
 
 . Accordingly, we held that the State failed to present sufficient evidence of a "breaking" and vacated Cunningham's conviction.
 
 Id.
 
 at 321-22, 324,
 
 536 S.E.2d at 345, 347-48
 
 .
 

 In contrast, the State argues that the instant case is more analogous to
 
 Ethridge
 
 ,
 
 168 N.C. App. 359
 
 ,
 
 607 S.E.2d 325
 
 . In
 
 Ethridge
 
 , the defendant argued the trial court erred by denying his motion to dismiss a number of charges.
 

 Id.
 

 at 362
 
 ,
 
 607 S.E.2d at 327
 
 . Ethridge alleged "the evidence was insufficient to prove [he] was the perpetrator."
 

 Id.
 

 We disagreed and pointed to the following evidence:
 

 A vehicle registered to [Ethridge] and identified by others as belonging to [Ethridge], was seen at the crime scene. The vehicle, with its tailgate open, was pulled up to the door of the house. A coffee table was seen in the car.
 

 *367
 
 [Ethridge] was placed
 
 *187
 
 ... next door to the crime scene on the day the offenses occurred.
 

 Id.
 

 Here, Melvin was not at her apartment the day of the robbery. A neighbor, McKoy, saw a vehicle backed up to the victim's patio door. Neighbors told Officer Tate they saw two males "going in and out of the apartment" while outside smoking. One of the men, Defendant, was recognized by neighbors because of his relationship to Melvin. When one of the neighbors, Wilson, spoke to Defendant, he seemed "startled and anxious." Melvin told the officer that only three people knew she was going to be out of town-one of whom was Defendant.
 

 Lofty saw Defendant and another male in the following places: by the victim's apartment, on the front porch, right in front of the apartment door, and then in the parking lot, next to a vehicle. The vehicle "kept coming and going." At one point, Lofty saw Defendant in the driver's side of the vehicle. Defendant "got startled[,]" the two slammed the trunk, and then they left. At some point, Lofty saw a television in the trunk. Lofty saw the other male "standing there" and Defendant would be "gone" at some points. That night, Lofty also heard a lot of noise ("banging on the walls"). The next morning, Lofty's daughter noticed the victim's apartment door was open and crime scene investigators confirmed that the door had been pried open.
 

 Wilson also testified that she saw Defendant and another man parked with a car backed up to the victim's door. She saw "stuff" in the trunk of the car. She testified: "It caught them off guard when we walked out on the porch and they closed the trunk very, very fast. The sunroof was open, [Defendant] was in the driver's seat, the other guy was in the passenger and they took off and went down the road." Wilson saw the vehicle come and go at least four, and maybe five, times.
 

 When the victim called Defendant to ask about that night, he told her he was out of town-a fact contradicted by the several witnesses' testimonies. When Melvin returned home, her 55-inch television was missing-a television so big she said it would take more than one person to carry out.
 

 We conclude there was sufficient evidence Defendant was the perpetrator of the crimes and individually committed the crimes. The case
 
 sub judice
 
 more closely aligns with
 
 Ethridge
 
 than with
 
 Cunningham
 
 . Witnesses saw Defendant driving a car that came to the victim's apartment at least four times. At times, Defendant was standing by the car,
 
 *368
 
 and at other times, witnesses did not see Defendant. Defendant did not have permission to be there. A witness saw a television in the trunk of the car Defendant drove. Televisions were stolen from the victim's apartment. When spoken to, Defendant acted "startled[,]" slammed the trunk, which contained the television, and drove away. Considering the evidence in the light most favorable to the State and giving the State the benefit of every reasonable inference, there is sufficient evidence that Defendant perpetrated the crimes. As such, we hold the trial court did not err in denying Defendant's motions to dismiss.
 

 B. Jury Instructions
 

 Next, Defendant argues the trial court plainly erred in its jury instructions on felonious larceny.
 

 "[A]n issue that was not preserved by objection noted at trial ... may be made the basis of an issue presented on appeal when the judicial action question is specifically and distinctly contended to amount to plain error." N.C. R. App. P. 10(a)(4) (2017). "[T]he plain error standard of review applies on appeal to unpreserved instructional or evidentiary error."
 
 State v. Lawrence
 
 ,
 
 365 N.C. 506
 
 , 518,
 
 723 S.E.2d 326
 
 , 334 (2012). Plain error exists when: (1) there is an error; (2) that is plain; (3) that affects a substantial right; (4) that must seriously affect the fairness, integrity or public reputation of judicial proceedings.
 
 Id
 
 . at 515-16,
 
 723 S.E.2d at 332-33
 
 . "[P]lain error review should be used sparingly, only in exceptional circumstances, to reverse criminal convictions on the basis of unpreserved error[.]"
 
 Id.
 
 at 517,
 
 723 S.E.2d at 333
 
 .
 

 *188
 
 As discussed
 
 supra
 
 , Defendant argues the State presented insufficient evidence that he personally took property worth over $1,000. However, we find that the State produced sufficient evidence Defendant personally committed these crimes, and that he took property in excess of $1,000. As the trial court did not err in its jury instructions on felonious larceny, we need not review whether the alleged error amounted to plain error.
 

 Conclusion
 

 Defendant received a fair trial, free of prejudicial error.
 

 NO ERROR.
 

 Chief Judge McGEE and Judge ELMORE concur.
 

 [1]
 

 Defendant is sometimes referred to as "Maurice Sholar," "Maurice Webb-Sholar," or "Maurice Webb-Scholar" in various court documents. On the Judgments, Defendant's name appears as "Maurice Jason Webb."
 

 [2]
 

 At trial, Officer Carly Tate testified about Lofty's statement without objection. We note that Lofty's statement to police is inconsistent with his trial testimony. At one point in his testimony, Lofty stated that he saw Defendant standing outside and the unidentified male going in and out of the apartment. Later in his testimony, Lofty stated he did not see anyone going back and forth from the apartment.
 

 [3]
 

 We note the logical inconsistency in conducting a de novo review of a motion to dismiss raised during trial retroactively through a filter of the ultimate jury instructions. However, this is the standard that we adopted in our prior published opinions and we are bound to follow this retroactive analysis of a defendant's motion to dismiss.
 
 See
 

 In re Civil Penalty
 
 ,
 
 324 N.C. 373
 
 , 384,
 
 379 S.E.2d 30
 
 , 37 (1989) ("[A] panel of the Court of Appeals is bound by a prior decision of another panel of the same court addressing the same question, but in a different case, unless overturned by an intervening decision from a higher court.").