DAVIS, Judge.
Robert Earl Wilkerson ("Defendant") appeals from his convictions for robbery with a dangerous weapon and conspiracy to commit robbery with a dangerous weapon. On appeal, he contends that the trial court erred by (1) admitting certain photographs into evidence; (2) admitting testimony of a prior crime committed by him; (3) instructing the jury on the theory of acting in concert; (4) admitting victim impact testimony and the testimony of Defendant's accomplice concerning his fear of Defendant; and (5) denying his motion for a speedy trial. After careful review, we conclude that Defendant has failed to show that the trial court committed prejudicial error at his trial. However, we remand to the trial court for further proceedings in connection with Defendant's claim that his right to a speedy trial was violated.
Factual Background
The State's evidence at trial tended to establish the following facts: On the morning of 7 April 2010, Defendant and Leryan Scarlett ("Scarlett") left Defendant's family tire business on Alston Avenue in Durham, North Carolina in a green Oldsmobile Intrigue (the "Intrigue") in order to "[commit] another crime." Scarlett was driving the Intrigue and Defendant was riding in the front passenger seat. Defendant was armed with a Smith and Wesson .40 caliber pistol and Scarlett was armed with a Ruger P89 pistol.
At 11:30 a.m. that same day, George Pratt ("Pratt") drove to the home of Ethel Crawford ("Crawford") at the corner of Franklin Street and Alston Avenue in order to pick her up and drive her to work. Pratt was driving a burgundy Plymouth Acclaim (the "Acclaim").
While Pratt was parked in front of Crawford's home waiting for her to come out, Defendant and Scarlett approached the intersection of Franklin Street and Alston Avenue. Scarlett recognized Pratt's car and, knowing that Pratt often sold "ball tickets," formed the belief that he likely had a large amount of cash on his person. Scarlett then told Defendant "[t]here's someone right there," at which point Scarlett pulled up behind the Acclaim and "swapped" guns with Defendant.
Defendant then exited the Intrigue, walked to the Acclaim's driver side door, and aimed Scarlett's gun at Pratt through the open driver's side window. He then demanded money from Pratt, opened the car door, and shot Pratt twice-once in his right ankle and once above his left knee. Defendant threw Pratt out of the car and onto the street. Defendant then got into the driver's seat of the Acclaim and drove the car away from the scene with Scarlett following him in the Intrigue.
Maverick Tatum, a neighbor of Crawford's, witnessed the robbery. Although he could not identify the perpetrators, he was able to see the license plate number of the Intrigue as the Intrigue and the Acclaim drove away. The Intrigue was later discovered to belong to Defendant's girlfriend, Sharrell Roberson ("Roberson"), who lived with Defendant at 514 Currin Street in Durham.
Defendant and Scarlett proceeded to drive to North Hyde Park where they parked both cars. Defendant then began searching Pratt's car for anything of value. While doing so, Defendant realized that he had dropped his cellphone at the scene of the robbery. Defendant wiped down Pratt's car with his shirt and threw the keys away from the vehicle. He and Scarlett then drove in the Intrigue to the residence at 514 Currin Street.
Approximately five minutes after arriving at the residence, Defendant noticed a police car parked outside. Defendant immediately took both his and Scarlett's guns and fled out the back window of the house. Shortly thereafter, additional law enforcement officials arrived, surrounded the house, and ordered any occupants of the house to exit the residence. Scarlett complied and was taken into custody. He was thereafter arrested on an outstanding warrant for failure to appear and taken to the Durham County Detention Facility.
Scarlett was released on bond roughly an hour later and went to the home of Defendant's cousin, believing that Defendant might be there. Upon arrival, Scarlett discovered that Defendant was, in fact, present. After a brief conversation, Scarlett and Defendant proceeded to drive to an area off of Mineral Springs Road where Defendant had hidden his and Scarlett's guns and recovered the weapons. Two days later, Scarlett disposed of the Ruger P89 pistol by disassembling it and throwing the pieces out of his car window at various intervals along Red Mountain Road.
Neither the Smith and Wesson pistol nor the pieces of the Ruger P89 pistol were ever recovered. Approximately two months after these events, Pratt died as a result of complications from the gunshot wounds he had suffered.
On 2 July 2010, pursuant to an investigation into Pratt's robbery by Investigator Anne Cristaldi with the Durham Police Department's Violent Crimes Unit, a warrant was issued for Defendant's arrest. That same day Defendant was arrested, and on 2 August 2010, Defendant was indicted on charges of first-degree murder, robbery with a dangerous weapon, and conspiracy to commit robbery with a dangerous weapon.
On 7 May 2012, Defendant filed a motion for a speedy trial. The motion was filed pro sedespite the fact that Defendant had been appointed counsel prior to the filing of this motion. On 23 August 2012, a hearing was held on Defendant's motion before the Honorable Michael R. Morgan. At the hearing, Defendant's counsel adopted the pro semotion and argued that nearly two years had passed since Defendant had been indicted. After hearing arguments from Defendant's counsel and the State, Judge Morgan denied the motion. On 19 September 2012, Judge Morgan entered a written order reflecting his ruling.
A jury trial was held in Durham County Superior Court on 21 April 2014 before the Honorable W. Osmond Smith, III. Immediately before trial, Defendant filed a pro semotion to dismiss in which he asserted that his right to a speedy trial had been violated. As with his previous pro semotion, the motion was adopted by his attorney. After hearing arguments of counsel, the trial court ultimately denied the motion.
At trial, the State introduced into evidence the cellphone found at the scene of the robbery. The cellphone contained pictures that were also admitted into evidence depicting Defendant holding an assault rifle inside the Currin Street residence while extending his middle finger as well as an image of an assault rifle placed on a chair inside the residence.
Forensic Scientist Supervisor Zack Kallenbach with the North Carolina State Crime Lab performed an analysis of the cellphone and testified at trial that the cellphone contained Defendant's DNA profile. In addition, Kallenbach testified that Defendant's DNA profile was also found on a glove discovered in the back of the Intrigue shortly after the robbery. The glove was also admitted into evidence.
The State also elicited the testimony of Marlo Bates ("Bates"), Pratt's granddaughter, who testified as to Pratt's deteriorating condition after being shot during the robbery and the impact it had upon his family. She further testified that Pratt had told her on multiple occasions that the man who had robbed him had dropped his cellphone during the course of the robbery.
Scarlett testified at trial pursuant to a plea agreement he had entered into with the State. Scarlett testified as to the events and circumstances surrounding the robbery of Pratt and further discussed a separate robbery committed by Defendant and him the previous night. During his testimony, Scarlett stated that he was afraid for his family's safety due to the fact that he was giving testimony against Defendant.
Defendant was convicted of robbery with a dangerous weapon and conspiracy to commit robbery with a dangerous weapon. The jury acquitted Defendant of the first-degree murder charge. Defendant was sentenced to 97-126 months imprisonment for the robbery with a dangerous weapon charge and 38-55 months for the conspiracy to commit robbery with a dangerous weapon charge with the sentences to run consecutively. Defendant gave notice of appeal in open court.
Analysis
I. Admission of Photographs
Defendant initially contends that the trial court erred in admitting the photographs discovered on the cellphone left at the scene of the robbery depicting him holding an assault rifle with his middle finger extended and showing an assault rifle sitting on a chair. He asserts that "[t]hese photographs were irrelevant and more prejudicial than probative" under Rule 403 of the North Carolina Rules of Evidence.
Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C.R. Evid. 401. However, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N . C.R. Evid. 403.
The State contends that these photographs were admitted in order to (1) demonstrate that the cellphone was linked to Defendant; (2) connect Defendant to the crime scene; and (3) link Defendant to the Currin Street residence, which was the address at which the photographs in question were taken and where Scarlett testified he and Defendant fled after their commission of the robbery.
Prior to trial, Defendant filed a motion in limine to exclude the photographs pursuant to Rule 403. After hearing arguments from Defendant and the State, the trial court ruled that "[t]he defendant's motion in limine to exclude photographs from the subject cellphone, that motion is denied."
We agree with the State that the photographs were relevant for the purposes offered by the State. As the photographs were relevant, it was Defendant's burden to demonstrate that the trial court abused its discretion by admitting them under Rule 403. Defendant has failed to carry this burden. See State v. Matthews,175 N.C.App. 550, 554-55, 623 S.E.2d 815, 818-19 (2006) (holding that admission of photographs showing defendant loading gun was not abuse of discretion because evidence was relevant to show defendant possessed gun for charge of possession of firearm by felon); State v. Johnson,78 N.C.App. 68, 71, 337 S.E.2d 81, 83-84 (1985) (upholding admission of photographs depicting defendant smoking marijuana in close proximity to marijuana plants where photographs were relevant to show, among other things, that defendant was living at certain location).
II. Admission of Testimony Concerning Prior Robbery
Defendant next asserts that the trial court erred in allowing Scarlett to testify as to a prior robbery committed by Defendant and him the night before the robbery of Pratt. Specifically, he contends that the two crimes lacked sufficient similarities in order for testimony concerning the first robbery to be admissible under Rule 404(b) and that such testimony was unduly prejudicial under Rule 403.
North Carolina Rule of Evidence 404(b) states, in pertinent part, that
[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.
N.C.R. Evid. 404(b).
Our Supreme Court has held that
when analyzing rulings applying Rules 404(b) and 403, we conduct distinct inquiries with different standards of review. When the trial court has made findings of fact and conclusions of law to support its 404(b) ruling ... we look to whether the evidence supports the findings and whether the findings support the conclusions. We review de novo the legal conclusion that the evidence is, or is not, within the coverage of Rule 404(b). We then review the trial court's Rule 403 determination for abuse of discretion.
State v. Beckelheimer,366 N.C. 127, 130, 726 S.E.2d 156, 159 (2012).
It is well-settled that "Rule 404(b) is a clear general rule of inclusion.The rule lists numerous purposes for which evidence of prior acts may be admitted, including motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident. This list is not exclusive, and such evidence is admissible as long as it is relevant to any fact or issue other than the defendant's propensity to commit the crime." Id.(internal citations and quotation marks omitted).
Although we construe Rule 404(b) as a general rule of inclusion, it is nevertheless "constrained by the requirements of similarity and temporal proximity." State v. AlBayyinah,356 N.C. 150, 154, 567 S.E.2d 120, 123 (2002). However, "[i]t is not necessary that the similarities between the two situations rise to the level of the unique and bizarre. Rather, the similarities simply must tend to support a reasonable inference that the same person committed both the earlier and later acts." State v. Williamson,146 N.C.App. 325, 333, 553 S.E.2d 54, 60 (2001) (internal citations and quotation marks omitted), disc. review denied,355 N.C. 222, 560 S.E.2d 366 (2002).
When the State sought to introduce the testimony of Scarlett concerning the prior robbery, Defendant's counsel objected, and the trial judge heard arguments outside of the presence of the jury. The court ultimately overruled the objections, stating as follows:
The Court rules that it is evidence admissible under Rule 404(b), not to prove the character of the defendant, and not to prove that he acted in conformity therewith; however, such evidence may be and is admissible for other purposes, such as proof of motive, intent, preparation, and plan, with regard to the alleged robbery of the victim on April 7, 2010.
The Court will give a limiting instruction under Rule 404(b). The Court has also considered under the balancing of Rule 403, and rules that the probative value is not outweighed by the danger of unfair prejudice or other issues under Rule 403. The defendant's objection is overruled.
The trial court proceeded to give the following limiting instruction to the jury:
Members of the jury, with regard to the evidence about to be offered by the State through this witness, I say to you, and I'm referring to evidence of conduct between this witness and the defendant prior to April 7, 2010, I say to you in that regard, evidence of other crimes, wrongs, or acts is not admissible to prove the character of the defendant in order to show that the defendant acted in conformity therewith. Such evidence may be admissible and considered by you for other purposes, such as proof of motive, intent, preparation, and/or plan in connection with the crime or crimes charged in this case. You may consider such evidence for such limited purposes for which it is received. With that the objection is overruled.
Scarlett then testified as follows concerning the 6 April 2010 robbery:
Q.... The day before the incident with Mr. Pratt, on April 6th, 2010, did you meet up-did you see the defendant on that day?
A. Yes, sir.
Q. And at that time, what-did the two of you go somewhere?
A. Yes, sir.
Q. Who else besides you and the defendant was with you?
A. His cousin.
Q. Do you know his cousin's name?
A. His cousin's name is Mike Taylor.
Q. And where did you go?
A. We went to Butner, North Carolina.
Q. And what happened up in Butner?
A. We robbed two guys.
Q. Who is we?
A. Me and [Defendant].
Q. Where was the cousin when this was happening?
A. He was in the car.
Q. When that happened, did you have a gun?
A. Yes, sir.
Q. How about [Defendant]?
A. Yes, sir.
Q. Did you know what type of gun he carried?
A. A Smith and Wesson .40 caliber.
Q. Whose idea was it as far as choosing these two individuals up in Butner?
A. [Defendant].
In arguing that Scarlett's testimony regarding the prior robbery was inadmissible under Rule 404(b), Defendant cites Al-Bayyinah,in which our Supreme Court rejected the admission of Rule 404(b) evidence for the following reasons:
Assuming, without deciding, that defendant committed the [prior] robberies, substantial evidence of similarity among the prior bad acts and the crimes charged is nonetheless lacking. The details of the [prior] robberies were generic to the act of robbery: The robber wore dark, nondescript clothing that obscured his face; carried a weapon; demanded money; and fled upon receiving it. Both times [the] store was robbed, the perpetrator took money, while in the instant crime, the robber took nothing of substantial value. [The store owner] was robbed first at gunpoint, then under threat of immolation, while the victim in the instant crime was surprised from behind, hit on the back of the head, and stabbed.
Al-Bayyinah,356 N.C. at 155, 567 S.E.2d at 123.
Al-Bayyinah is distinguishable from the present case. Here a number of similarities existed between the two crimes which were committed within 24 hours of each other. First, Defendant and Scarlett committed both robberies together, using the same guns in both robberies. Second, both crimes were accomplished by robbing victims at gunpoint. Third, Defendant and Scarlett conspired in advance to commit both robberies. Finally, in both instances, Scarlett and Pratt targeted in advance specific victims known to at least one of them as being a suitable candidate to rob.
Consequently, we believe sufficient similarities existed between the 6 April 2010 robbery and the robbery of Pratt to support the admission of this evidence. Moreover, we cannot say that the trial court abused its discretion in applying the Rule 403 balancing test.
In a related argument, Defendant claims that he did not receive adequate advance notice prior to the State's introduction of the Rule 404(b) testimony concerning the 6 April 2010 robbery. The record reveals that Defendant was notified by the State two days before trial of its intent to present evidence of the prior robbery. Defendant has failed to show that under these circumstances the failure to give greater notice constituted prejudicial error. See State v. Parker,140 N.C.App. 169, 176, 539 S.E.2d 656, 662 (2000) (rejecting argument that defendant's constitutional rights were violated by State's failure to disclose evidence of defendant's prior misconduct it intended to introduce at trial; "The North Carolina Supreme Court has held that Rule 404(b) is not a discovery statute which requires the State to disclose such evidence as the State might introduce under the rule.... There is no support for defendant's contention that further disclosure of Rule 404(b) evidence was required under North Carolina law. Thus, we hold that denial of pre-trial disclosure of Rule 404(b) evidence did not deprive defendant of a fair trial ..." (internal citations, quotation marks, and brackets omitted)), appeal dismissed and disc. review denied,353 N.C. 394, 547 S.E.2d 37, cert. denied,532 U.S. 1032, 149 L.Ed2d 777 (2001).
III. Acting in Concert Instruction
Defendant next argues that the trial court erred in instructing the jury on the theory of acting in concert. We disagree.
Pursuant to a request by the State, the instruction on acting in concert was given as to the robbery with a dangerous weapon charge. The trial court's instruction on acting in concert stated as follows:
For a defendant to be guilty of a crime, it is not necessary that the defendant do all of the acts necessary to constitute the crime. If two persons join in a common purpose to commit robbery with a firearm, each of them, if actually present, is guilty of the crime....
If you find from the evidence beyond a reasonable doubt that on or about the alleged date, the defendant, acting together with Leryan I. Scarlett, had in his possession a firearm, and took and carried away property from the person or presence of a person, without his voluntary consent, by endangering or threatening his life with the use or threatened use of a firearm, the defendant knowing that he was not entitled to take the property, and intending to deprive that person of its use permanently, it would be your duty to return a verdict of guilty of robbery with a firearm. If you do not so find or have a reasonable doubt as to one or more of these things, it would be your duty to return a verdict of not guilty.
Defendant failed to object to this jury instruction. "Where a defendant fails to object to jury instructions at trial, the defendant is entitled to relief only if the instructions constitute 'plain error." ' State v. Combs,---N.C.App. ----, ----, 739 S .E.2d 584, 588, disc. review denied,366 N.C. 596, 743 S.E.2d 220 (2013).
For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice-that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty. Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affects the fairness, integrity or public reputation of judicial proceedings.
State v. Lawrence,365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (internal citations, quotation marks, and brackets omitted).
Our Supreme Court has held that "[a] person may be found guilty of committing a crime if he is at the scene acting together with another person with a common plan to commit the crime, although the other person does all the acts necessary to commit the crime." State v. Jefferies,333 N.C. 501, 512, 428 S.E.2d 150, 156 (1993). Defendant contends that the acting in concert instruction was erroneous here because "there was no evidence that anyone other than [Defendant] could have committed the robbery if the State's evidence was to be believed." We disagree.
The evidence presented at trial tended to show that (1) Defendant and Scarlett were both present at the scene of the crime; (2) prior to the robbery, both men were actively looking for someone to rob; (3) Scarlett identified Pratt as a desirable target for the robbery; (4) Scarlett "swapped" guns with Defendant immediately before Defendant robbed Pratt because Scarlett's gun was not registered and would therefore be more difficult to trace; (5) Scarlett provided transportation for Defendant back to the Currin Street address after he and Defendant abandoned Pratt's car; and (6) Scarlett subsequently assisted Defendant in disposing of the Ruger P89 used by Defendant during the robbery.
In rejecting Defendant's argument on this issue, we are guided by our decision in State v. Bagley,183 N.C.App. 514, 644 S.E.2d 615 (2007). In Bagley,the State introduced evidence
sufficient to support a jury instruction, that defendant acted in concert with [an accomplice] to rob [the victim]. Defendant and [the accomplice] went together to the BP station where [the victim] was robbed. Defendant used [the accomplice's] gun to rob [the victim]. [The accomplice] sat in the getaway car and waited while defendant robbed [the victim], then they left the crime scene together. On this evidence, the trial court's decision to instruct the jury on the theory of acting in concert was not arbitrary or unreasonable.
Id.at 525, 644 S.E.2d at 622.
Defendant cites to State v. Hargett,255 N.C. 412, 121 S.E.2d 589 (1961), in support of his argument on this issue. In Hargett,however, the challenged jury instruction was an instruction on the theory of aiding and abetting-not acting in concert. Moreover, while the defendant in Hargett,who was charged with murder, was present at the scene with the man who actually killed the victim, "he refused to strike [the] deceased when requested by [the killer] and protested against the assault made by [the killer]." Id.at 416, 121 S.E.2d at 592. This factual scenario is not analogous to the present case. Here, Scarlett was present at the scene of the crime and-far from discouraging Defendant from committing the crime-meaningfully participated in the robbery by selecting the target, providing Defendant with an unregistered firearm to commit the robbery, and following Defendant as he left the crime scene. Therefore, Defendant's argument on this issue is overruled.
IV. Victim Impact and Accomplice Testimony
Defendant also asserts that the trial court erred in admitting (1) testimony from Bates concerning Pratt's condition and the effect it had on his family after the robbery; and (2) Scarlett's testimony that he was afraid for his family's safety as a result of his decision to testify against Defendant. Defendant failed to object at trial to either Bates' or Scarlett's testimony. We therefore review these arguments only for plain error. See Lawrence,365 N.C. at 518, 723 S.E.2d at 334.
A. Victim Impact Testimony
Defendant challenges the following testimony given by Bates:
Q. Now, did that-how was that affected by the events of April 7th, 2010 when he was shot?
A. Can you repeat that?
Q. How did [Pratt's] life change, or did it change?
A. It changed tremendously for him. At that point, he had-because I am married with children, and I have a sister who is not, he had to ask my sister to move in to help him. He could no longer walk. Once he was admitted and discharged from the hospital, after about three or four days, he could no longer walk.
There would be times when she would have to call me to ask me if I could come over there and actually help her lift him out of the bed so she-so that she could clean his wound to his leg and re-bandage the wound. And just pretty much as soon as we would try and move him, he would start screaming from the pain. It was just very painful....
....
Q. You don't have to go into what she said.
A. Oh, okay. So he was in excruciating pain.
We have defined victim impact evidence as
includ[ing] evidence of physical, psychological, or emotional injury, or economic or property loss suffered by the victim. Victim impact evidence also includes evidence of the effect of the crime on the victim's family, including the psychological and financial effect.
State v. Graham,186 N.C.App. 182, 190, 650 S.E.2d 639, 645 (2007) (internal citation, quotation marks, and brackets omitted), appeal dismissed and disc. review denied,362 N.C. 477, 666 S.E.2d 765 (2008). However, "the effect of a crime on a victim's family often has no tendency to prove whether a particular defendant committed a particular criminal act against a particular victim; therefore victim impact evidence is usually irrelevant during the guilt-innocence phase of a trial and must be excluded." Id.
Even assuming arguendothat the trial court erred in admitting this evidence, Defendant has failed to establish plain error. The evidence against Defendant was overwhelming. The evidence offered at trial included (1) the testimony of Scarlett as to the details surrounding the commission of the robbery; (2) a cellphone recovered at the scene of the crime bearing Defendant's DNA profile that also contained pictures of Defendant placing him at the Currin Street address; (3) a glove recovered from the Intrigue that also contained Defendant's DNA profile; and (4) evidence that the vehicle observed leaving the robbery scene belonged to Defendant's girlfriend, Roberson, who lived at the Currin Street address with Defendant. Therefore, in light of all this evidence, we cannot say that Bates' brief victim impact testimony in a trial that lasted eight days and produced an overall transcript totaling 1,836 pages of trial proceedings prejudiced Defendant to the extent that it "seriously affect[ed] the fairness, integrity or public reputation" of the proceedings. Lawrence,365 N.C. at 518, 723 S.E.2d at 334 (citation, quotation marks, and brackets omitted).
B. Scarlett's Testimony
Defendant also challenges the following testimony of Scarlett as constituting plain error:
Q.... [W]here are you living right now?
A. I am living at Craven Correctional Institute.
Q. Do you know why you're in Craven?
A. I'm in safe keeping.
Q. And why is it that you're in safe keeping as opposed to in general population, sir?
A. Well, for my family and my protection.....
Q. Are you concerned about anyone's safety as a result of testifying here?
A. Yes, sir.
Q. Whose safety are you concerned about?
A. My family.
Q. How about your own?
A. Nah, but my family.
Defendant asserts that the jury likely inferred from this evidence that Scarlett feared retaliation from Defendant for testifying against him at trial. However, we have held that when an accomplice testifies against a defendant pursuant to an agreement with the State, it is permissible for him to note his resulting fear of the defendant. See State v. Carr,54 N.C.App. 309, 311, 283 S.E.2d 175, 177 (1981) ("[The coconspirator] also testified, over objection, that he was afraid of defendant and that during his incarceration in the Durham County jail he had experienced no difficulty in getting along with the prison personnel. This testimony was competent. [The coconspirator] was testifying pursuant to an agreement with the state and this testimony was logically related to that agreement. Moreover, defendant has failed to show any prejudice from the testimony." (internal citation omitted)). Therefore, Defendant's argument on this issue lacks merit.
V. Right to a Speedy Trial
Defendant's final argument on appeal is that the trial court erred in denying his motion to dismiss on the ground that his Sixth Amendment right to a speedy trial was violated. He asserts that (1) he was indicted on 2 August 2010; (2) he initially asserted his right to a speedy trial on 7 May 2012; and (3) his case was not brought to trial until 14 April 2014.
Our Supreme Court has stated that "[t]he right to a speedy trial is different from other constitutional rights in that, among other things, deprivation of a speedy trial does not per seprejudice the ability of the accused to defend himself; it is impossible to determine precisely when the right has been denied; it cannot be said precisely how long a delay is too long; there is no fixed point when the accused is put to a choice of either exercising or waiving his right to a speedy trial; and dismissal of the charges is the only possible remedy for denial of the right to a speedy trial." State v. McKoy,294 N.C. 134, 140, 240 S.E.2d 383, 388 (1978).
The United States Supreme Court has articulated a four-part analytical framework for assessing claims asserting the denial of this right.
A balancing test necessarily compels courts to approach speedy trial cases on an ad hoc basis.... Though some might express them in different ways, we identify four such factors: Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.
....
We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process. But, because we are dealing with a fundamental right of the accused, this process must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution.
Barker v. Wingo,407 U.S. 514, 530-33, 33 L.Ed.2d 103, 116-19 (1972).
In adopting this balancing test for similar claims arising under the North Carolina Constitution, our Supreme Court held in State v.. Spivey,357 N.C. 114, 579 S.E.2d 251 (2003), that
[i]n Barker v. Wingo,the United States Supreme Court identified four factors that courts should assess in determining whether a particular defendant has been deprived of his right to a speedy trial under the federal Constitution. These factors are: (i) the length of delay, (ii) the reason for delay, (iii) the defendant's assertion of his right to a speedy trial, and (iv) whether the defendant suffered prejudice as a result of the delay. We follow the same analysis when reviewing such claims under Article I, Section 18 of the North Carolina Constitution.
This Court must consider the factors in light of the balancing test set out by the United States Supreme Court[.]
Id.at 118, 579 S.E.2d at 254 (internal citations and quotation marks omitted).
With regard to the first Barker factor, this Court has stated that
the length of the delay is not per sedeterminative of whether a defendant has been deprived of his right to a speedy trial. The United States Supreme Court has noted that lower courts have generally found post-accusation delay presumptively prejudicial at least as it approaches one year. However, presumptive prejudice does not necessarily indicate a statistical probability of prejudice; it simply marks the point at which courts deem the delay unreasonable enough to trigger the Barker[i]nquiry.
State v. Washington,192 N.C.App. 277, 283, 665 S.E.2d 799, 803-04 (2008) (internal citations and quotation marks omitted).
In applying the second Barkerfactor-whether the challenged delay was reasonable-we have held that
a defendant bears the burden of presenting prima facieevidence that the delay was caused by the neglect or willfulness of the prosecution. Only after the defendant has carried his burden of proof by offering prima facieevidence showing that the delay was caused by the neglect or willfulness of the prosecution must the State offer evidence fully explaining the reasons for the delay and sufficient to rebut the prima facieevidence.
We have held that the constitutional guarantee does not outlaw good-faith delays which are reasonably necessary for the State to prepare and present its case. The proscription is against purposeful or oppressive delays and those which the prosecution could have avoided by reasonable effort.
Id.at 283, 665 S.E.2d at 804 (internal citations, quotation marks, brackets, ellipses, and emphasis omitted).
As to the third Barkerfactor, we have observed that
[w]hether and how a defendant asserts his right [to a speedy trial] is closely related to the other factors. The strength of his efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences. The more serious the deprivation, the more likely a defendant is to complain.
Id.at 290, 665 S.E.2d at 808 (citation and ellipses omitted). However, a "defendant's assertion of his right to a speedy trial is not determinative of whether he was denied the right." State v. Howell,211 N.C.App. 613, 619, 711 S.E.2d 445, 449 (2011) (citation and ellipses omitted). Rather, it is a single factor that must be considered together with the other three Barker factors. Id.
Finally, with regard to the fourth factor-prejudice to the defendant-we have noted that
the United States Supreme Court has recognized three objectives of the right to a speedy trial: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these forms of prejudice, the most serious is the last, as the inability of a defendant adequately to prepare his case skews the fairness of the entire system.
Washington,192 N.C.App. at 291, 665 S.E.2d at 808 (internal citations and quotation marks omitted). However, in assessing this factor, we have held that "[a] defendant must show actual, substantial prejudice. State v. Goldman,311 N.C. 338, 346, 317 S.E.2d 361, 366 (1984) (holding that 'in the absence of a showing of actual prejudice, ... our courts should consider dismissal in cases of serious crimes with extreme caution')." Howell,211 N.C.App. at 619, 711 S.E.2d at 450.
When applying the Barkertest, we have emphasized that none of the factors are per sedeterminative of whether or not a defendant has been deprived of his right to a speedy trial. Instead, we have held that "[i]n order to conclude there has been a Sixth Amendment violation of a defendant's right to a speedy trial, the trial court must examine and consider allthe Barkerfactors listed above." Id.at 618, 711 S.E.2d at 449. "It is only after a trial court has considered all of the factors together and determined that a defendant has suffered an actual Sixth Amendment violation of his right to a speedy trial that dismissal of charges becomes mandatory." Id.at 619, 711 S.E.2d at 450.
With these principles in mind, we now turn to the speedy trial issue presented here. It is appropriate to recite the procedural history of Defendant's motions regarding this issue. On 7 May 2012, Defendant filed a motion for a speedy trial. The motion was filed pro sedespite the fact that counsel had previously been appointed to represent him. The motion stated, in pertinent part, as follows:
Defendant now gives formal notice of his request for Speedy Trial of his detainers.
Defendant asks the Court to dismiss the above mentioned charges if the Prosecutor does not proceed within six months of this motion being filed with the Clerk of Superior Court for Durham, NC.
A hearing on this motion was held on 23 August 2012 during which Defendant's trial counsel adopted the pro semotion. The State did not object to the trial court's consideration of the motion and participated in the hearing on this issue. The State suggests on appeal that because Defendant's 7 May 2012 motion was pro sethis issue was not properly raised. In support of this proposition, the State cites our Supreme Court's decision in State v. Grooms,353 N.C. 50, 540 S.E.2d 713 (2000), cert. denied,534 U.S. 838, 151 L.Ed.2d 54 (2001). However, in Howell,we distinguished Groomswith regard to this issue:
The State first argues that the trial court should not have considered Defendant's "Motion and Request for Dismissal" because Defendant filed it himself when he was represented by counsel. However, Defendant's counsel, the State, and the trial court all agreed to address the "Motion and Request for Dismissal" at the hearing, despite its having been filed by Defendant personally.... Nowhere in ... Groomsdoes our Supreme Court state that a trial court cannot consider a motion filed by a defendant personally when the defendant is represented by counsel, only that it is not error for the trial court to refuse to do so. Further, unlike in ... Grooms,Defendant's counsel in the present case argued the speedy trial issue at the hearing, and both the State and the trial court consented to addressing this issue. This argument is without merit.
Howell,211 N.C.App. at 615, 711 S.E.2d at 447-48. Because (1) Defendant's pro se motion was formally adopted by his counsel at the 23 August 2012 hearing; and (2) the State did not object to the motion being heard at the 23 August 2012 hearing, the trial court was authorized to consider the motion, and Judge Morgan proceeded to do so.
During its argument to the trial court at this hearing, the State represented that the only impediment to moving forward with Defendant's trial was the fact that it was still waiting on the SBI to complete a DNA analysis of certain evidence:
[STATE'S COUNSEL]: ... There is [sic] been a follow-up that took place about four months ago on additional [sic] to where they actually-officers got a search warrant and were able to get additional hair strands to do a follow-up analysis. And that's the one thing that we're still waiting for from the SBI, is this secondary examination that they were doing some trace evidence examinations with. That's the one thing that's kind of put us in this posture. As you could see, it's been on second setting for a significant amount of time.
So that's kind of where we are for the one component of why it's been on second setting and which, I think, kind of goes into one or two of the-of [Defendant's] motions.
THE COURT: What's the State's position on the status of the matter relative to what setting upon which it should be?
[STATE'S COUNSEL]: Your Honor, fortunately, just like [Defendant], we want to move this case forward. But, as well, we are waiting for SBI examination of information.
....
[STATE'S COUNSEL]: ... So that's kind of the position where we are. I do want to move this case forward as quickly as he would like it to go, but I'm also dealing with a neutral third party.
The trial court then ruled on Defendant's speedy trial motion as follows:
THE COURT: All right. Thank you. Well, I understand the concern which has spawned the motion for speedy trial. It is widely known that the State Bureau of Investigation is undergoing transitions concerning its abilities. The State in this case involving [Defendant], I believe, wants to proceed expeditiously as [Defendant] and his counsel would like to, as well.
If I grant the motion for speedy trial, then that has effects which bind the State in this matter from a prosecutorial standpoint to have certain time frames which it has no control in implementing at this time in light of the external party involved in this presentation, the SBI's role in supplying information to the State.
So while I certainly understand and even appreciate the spirit of the motion for speedy trial, I am going to deny it in light of the fact that the State of North Carolina in this prosecution is not in position to do any more than it can do until it gets the information which all pertinent parties in this case want and indeed need to have. So I will deny the motion for speedy trial on that rationale.
On 19 September 2012, the trial court entered an order on Defendant's motion for a speedy trial that contained the following findings of fact:
1. This matter is properly before this Court as this Court has both personal and subject matter jurisdiction.
2. The defendant is currently serving an active sentence in the State's prison for an unrelated matter.
3. On the date of this hearing, 23 August 2012, counsel for the defendant adopted defendant's pro-se motion, filed 7 May 2012.
4. The State is awaiting the results of laboratory analysis from the North Carolina State Crime Laboratory before prosecution of this case can move forward.
5. The State is otherwise prepared to prosecute this defendant, absent the above-stated pending laboratory analysis.
The trial court then made the following conclusions of law:
Based upon the aforementioned findings of fact, the Court concludes, as matters of law:
1. The State has not violated any speedy trial rights of the defendant, as the State is awaiting analysis of evidence from a third-party, independent of the State.
2. Thus, there are no violations for this Court to analyze pursuant to the factors for determination of speedy trial and United State[s] Constitutional violations set forth in Barker v. Wingo[407 U.S. 514 (1972) ] or violations of the defendant's North Carolina Constitutional rights as set out in State v. Spivey[357 N.C. 114 (2003) ].
3. Thus, the defendant's motion should therefore be DENIED.
On 21 April 2014, approximately one and a half years later, Defendant filed a pro sepre-trial motion to dismiss, once again asserting his right to a speedy trial. The motion to dismiss stated, in pertinent part, as follows:
3. Between August 1, 2012 and August 25, 2012 ADA Dale Morrill scheduled defendant's speedy trial motion to be heard in Durham County Superior Court.
4. During the hearing held to address the speedy trial motion ... ADA Morrill's sole argument during the hearing was that the SBI Crime Lab was "backed up" and "had not returned evidence in the case that would prove the defendants [sic] guilt or innocence." The Court denied defendants [sic] motion based on ADA Morrill's argument that the SBI was still conducting test [sic] on important evidence in the case. As it turned out ADA Morrill's argument to the Court was a knowingly outright LIE....
5. On 8-30-2012 defendants [sic] co-defendant Leryon Scarlett was transported to police headquarters to provide investigators with a proffered statement implicating the defendant in this crime. On 10-5-2012 Leryon Scarlett pled guilty to reduced charges in exchange for his testimony at the trials of the defendant and co-defendant Sharell Roberson.
6. On January 9th, 2013 defendants [sic] brother David Wilkerson died in [D]urham County. David Wilkerson was to be an important witness at the defendants [sic] trial. David Wilkerson was to be a defense witness who provided the defendant with an alibi for the day and time that the crime took place.
7. ADA Dale Morrill's intentional delay of four months in scheduling the speedy trial hearing and subsequent false statements to the Court during the speedy trial hearing was a deliberate attempt to delay the trial in order to hamper the defense and gain a tactical advantage over the defense. The States [sic] actions in this instance are clearly in conflict with the Supreme Court's holding in Barker v. Wingo407 U.S. 514, 92 S.Ct. 2182 33 L.Ed.2d 101 (1972) and therefor the defendant is entitled to a dismissal of all the charges in the indictment.
During a hearing before Judge Smith on 14 April 2014 regarding various pretrial motions, Defendant's trial counsel adopted Defendant's pro semotion to dismiss on speedy trial grounds, arguing that
[t]his motion is based, I believe, primarily on the denial of-the former denial of [Defendant's] motion for a speedy trial, which motion was heard back in August of the year 2012. At that motion the State represented that it was awaiting the results still of DNA testing before they could proceed to trial, and that had been the reason for some of the delay up until that point, August of 2012.
....
Subsequent to this motion being denied, it was determined that the State was, in fact, in possession of this DNA laboratory analysis that they claimed that they were waiting for.
....
[I]f it is true that the State made a material misrepresentation of fact in order to obtain a delay of the trial, while they worked out their deal with [Scarlett], then we would argue that is a denial of [Defendant's] fundamental constitutional rights. And as noted in the motion, potential witness for the defense, [Defendant's] brother, David Wilkerson, passed away in January of the year 2013. And this would have been an individual who might have been able to support [Defendant's] alibi as to being working at the time and the day that this took place. But because of the delay, that individual is now no longer able to be present and testify.
Therefore, we would move, based on violation of due process and fundamental fairness of [Defendant's] constitutional rights, both charges to be dismissed for the denial of his speedy trial motion.
The State did not object to the trial court's consideration of this motion. The prosecutor noted that he had not been personally involved in the case at the time Defendant's original speedy trial motion had been heard in 2012. The following exchange then took place between the trial court and the prosecutor:
THE COURT: But it was addressed with the representation at that time that the State was not-had not received the results of the lab test.
[STATE'S COUNSEL]: That appears to be the case, Your Honor. Having just been served with this, I was not present at that motion. I haven't seen the transcript, and I was not prepared to address this issue here today[.]
After hearing both sides' arguments and asking several questions, the trial court-without making any findings of fact-announced its ruling:
THE COURT: The defendant has made an insufficient showing to justify a dismissal under speedy trial grounds. The motion to dismiss is denied.
We agree with Defendant that the trial court erred in ruling on his motion to dismiss without fully applying the Barkertest. Defendant's trial counsel argued that (1) the State had made a material misrepresentation in responding to Defendant's earlier motion that it was still waiting on the SBI laboratory's analysis of evidence; the State had improperly used the delay for the strategic purpose of working out a plea agreement with Scarlett between the 23 August 2012 hearing and the date of trial; and (3) Defendant was prejudiced by the State's delay as a result of the death of an alibi witness in 2013, which precluded him from testifying at Defendant's trial. After hearing arguments from both parties, the trial court orally denied Defendant's motion to dismiss, simply stating that Defendant had "made an insufficient showing to justify a dismissal under speedy trial grounds."
The trial court erred by summarily denying Defendant's motion without considering all of the Barkerfactors and making appropriate findings. Therefore, we must remand this case to the trial court for a proper application of the Barkertest. See Howell,211 N.C.App. at 620, 711 S.E.2d at 450 (remanding motion to dismiss based on speedy trial grounds to trial court due to its failure to "conduct a full inquiry into all of the Barkerfactors before making its determination").
Conclusion
For the reasons stated above, we conclude that Defendant has failed to show that the trial court committed prejudicial error at his trial. However, we remand to the trial court for further proceedings consistent with this opinion with regard to Defendant's speedy trial motion.
NO PREJUDICIAL ERROR IN PART; REMANDED IN PART.
Judges STEELMAN and HUNTER, JR. concur.
Report per Rule 30(e).
Judge STEELMAN concurred in this opinion prior to 30 June 2015.
Opinion
Appeal by defendant from judgment entered 2 May 2014 by Judge W. Osmond Smith, III in Durham County Superior Court. Heard in the Court of Appeals 20 May 2015.