IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-985

Filed: 15 December 2020

Mecklenburg County, No. 16 CRS 229429

STATE OF NORTH CAROLINA

v.

CIERA YVETTE WOODS, Defendant.

Appeal by defendant from judgment entered 10 May 2019 by Judge Karen Eady-Williams in Mecklenburg County Superior Court. Heard in the Court of Appeals 7 October 2020.

*Attorney General Joshua H. Stein, by Assistant Attorney General Matthew L. Liles, for the State.*

*Appellate Defender Glenn Gerding, by Appellate Defender Glenn Gerding and Assistant Appellate Defender Aaron Thomas Johnson, for defendant-appellant.*

BERGER, Judge.

On May 9, 2019, a Mecklenburg County jury found Ciera Yvette Woods ("Defendant") guilty of embezzlement of a controlled substance by an employee of a registrant or practitioner under N.C. Gen. Stat. § 90-108(a)(14). Defendant appeals, arguing that the trial court (1) erred when it denied Defendant's motion to dismiss because the State did not prove Defendant's actions constituted embezzlement or that CVS Pharmacy ("CVS") was a "registrant;" and (2) plainly erred when it failed to instruct the jury on the statutory definition of "registrant." We disagree.

Factual and Procedural Background

Defendant was employed as a pharmacy technician at CVS in Charlotte, North Carolina. As a pharmacy technician, Defendant was responsible for the intake of prescriptions, entry of prescriptions to create labels for medication, and ensuring that the information on the prescriptions was correct. Once Defendant verified that the prescription information was correct, the pharmacist would fill the prescription and place it in a waiting bin for Defendant to retrieve and distribute to the customer.

On April 16, 2016, Defendant was receiving patient prescriptions at the drive-thru window. During Defendant's shift, an unidentified male provided Defendant with two prescriptions – one for Oxycodone, and one for Percocet. The Percocet prescription was complete, but the Oxycodone prescription only had the "drug listed and quantity" and did not provide patient information. A $100 bill was placed in between the two prescriptions. The unidentified male asked Defendant to complete the Oxycodone prescription with another patient's information.

Defendant accepted $100.00 from the unidentified individual and then accessed CVS's "patient portal system," retrieved a different patient's information, and fraudulently filled out the incomplete Oxycodone prescription using that patient's information. The two prescriptions were filled by the pharmacist and placed in a waiting bin. Defendant retrieved the prescriptions from the bin and gave them to the unidentified individual.

That same day, a CVS pharmacist filed a report expressing her concern that a technician may be passing fraudulent prescriptions. CVS then initiated an investigation. The following day, after reviewing the security footage and the prescriptions filled the prior day, the investigators interviewed Defendant. Defendant signed a written statement admitting that she took prescriptions from an individual in the drive-thru, and that she received $100.00 in payment to fraudulently process the two prescriptions.

Defendant was indicted on one count of embezzlement of a controlled substance by an employee of a registrant or practitioner pursuant to N.C. Gen. Stat. § 90-108(a)(14). At trial, Defendant made a motion to dismiss arguing that she did not violate N.C. Gen. Stat. § 90-108(a)(14) because she did not rightfully possess the prescriptions when she forged the patient information. Defendant also argued at trial that traditional embezzlement requires authorized possession of the diverted property. The trial court denied Defendant's motion to dismiss, and Defendant was convicted of embezzlement of a controlled substance by an employee of a registrant or practitioner under N.C. Gen. Stat. § 90-108(a)(14).

Defendant appeals, arguing that the trial court (1) erred when it denied Defendant's motion to dismiss because the State did not prove Defendant's actions constituted embezzlement or that CVS was a "registrant;" and (2) plainly erred when it failed to instruct the jury on the statutory definition of "registrant."

Analysis

I. Motion to Dismiss

"We review the trial court's denial of a motion to dismiss *de novo*." *State v. Blakney*, 233 N.C. App. 516, 518, 756 S.E.2d 844, 846 (2014) (citation omitted). "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632-33, 669 S.E.2d 290, 294 (2008) (citation and quotation marks omitted).

> "If there is more than a scintilla of competent evidence to support the allegations in the warrant or indictment, it is the court's duty to submit the case to the jury." *State v. Horner*, 248 N.C. 342, 344-45, 103 S.E.2d 694, 696 (1958). "The terms 'more than a scintilla of evidence' and 'substantial evidence' are in reality the same and simply mean that the evidence must be existing and real, not just seeming or imaginary." *State v. Earnhardt*, 307 N.C. 62, 66, 296 S.E.2d 649, 652 (1982) (citation omitted). "Substantial evidence is that amount of relevant evidence necessary to persuade a rational juror to accept a conclusion." *State v. Scott*, 356 N.C. 591, 597, 573 S.E.2d 866, 869 (2002) (citation omitted). "In ruling on a motion to dismiss for insufficient evidence, the trial court must consider the evidence in the light most favorable to the State, which is entitled to every reasonable inference which can be drawn from that evidence." *State v. Dick*, 126 N.C. App. 312, 317, 485 S.E.2d 88, 91 (1997) (citation omitted).

*State v. Pabon*, ___ N.C. App. ___, ___, ___ S.E.2d ___, ___ (2020). Further, "in borderline or close cases, our courts have consistently expressed a preference for submitting issues to the jury." *State v. Coley*, 257 N.C. App. 780, 789, 810 S.E.2d 359, 365 (2018) (*purgandum*).

A. <u>Access</u>

Defendant contends that the evidence presented at trial did not show embezzlement because Defendant never lawfully possessed the prescriptions which were obtained through fraud. However, Defendant was not charged with embezzlement of property received by virtue of employment pursuant to N.C. Gen. Stat. § 14-90. Rather, Defendant was convicted of violating N.C. Gen. Stat. § 90-108(a)(14), which states, in relevant part:

> (a)     It shall be unlawful for any person:
>
> (14)   Who is a registrant or practitioner or an employee of a registrant or practitioner and who is authorized to possess controlled substances or has access to controlled substances by virtue of employment, to embezzle or fraudulently or knowingly and willfully misapply or divert to his or her own use or other unauthorized or illegal use or to take, make away with or secrete, with intent to embezzle or fraudulently or knowingly and willfully misapply or divert to his or her own use or other unauthorized or illegal use any controlled substance which shall have come into his or her possession or under his or her care.

N.C. Gen. Stat. § 90-108(a)(14) (2019).

"[T]his Court's duty is to carry out the intent of the legislature. As a cardinal principle of statutory interpretation, if the language of the statute is clear and is not ambiguous, we must conclude that the legislature intended the statute to be implemented according to the plain meaning of its terms." *State v. Reaves-Smith*, ___ N.C. App. ___, ___ 844 S.E.2d 19, 24 (2020) (citation omitted).

By its plain language, N.C. Gen. Stat. § 90-108(a)(14) makes it unlawful for an employee who is "authorized to possess controlled substances" or who has "access to controlled substances by virtue of their employment," to misapply or divert a controlled substance for an unauthorized or illegal use. N.C. Gen. Stat. § 90-108(a)(14). *See State v. Moraitis*, 141 N.C. App. 538, 541, 540 S.E.2d 756, 757-58 (2000) ("A statute that is clear on its face must be enforced as written . . . [w]e presume that the use of a word in a statute is not superfluous and must be accorded meaning, if possible" (citation and quotation marks omitted)). Accordingly, because N.C. Gen. Stat. § 90-108(a)(14) has two clauses connected by the disjunctive "or," the State had the burden of proving Defendant was either "authorized to possess controlled substances" or had "access to them by virtue her employment." *See State v. Conway*, 194 N.C. App. 73, 77-78, 669 S.E.2d 40, 43 (2008) ("[W]here a statute contains two clauses which prescribe its applicability, and the clauses are connected by a disjunctive (e.g. 'or'), the application of the statute is not limited to cases falling within both clauses, but will apply to cases falling within either of them." (citation and quotation marks omitted)).

At trial, Dr. Lauren Kaskie, a CVS pharmacist, testified that when a prescription was dropped off at the pharmacy, the pharmacy technician had "access to patient portals" which included patient information, and would "go to [the] computer system, . . . to generate a label." Once a label is generated, the prescription

is then filled by the pharmacist and placed in a "waiting bin" where the pharmacy technician would then "walk to the waiting bin to retrieve" the prescription for the customer. Dr. Kaskie further testified that pharmacy technicians cannot count or fill Schedule II prescriptions, including Oxycodone and Percocet, but "they are entrusted with handing prescriptions to the appropriate customer."

Here, after Defendant received the incomplete Oxycodone prescription, she accessed the CVS patient portal system and completed the prescription with a different patient's information. Defendant then sent the prescription to the pharmacist to be filled. After being placed in the waiting bin, Defendant took the fraudulently filled prescription and delivered it to the unidentified individual. Accordingly, Defendant had "access to [the prescriptions] by virtue of her employment" because she was allowed to take prescriptions from the waiting bins once they were filled by the pharmacist. Therefore, the trial court did not err in denying her motion to dismiss.

B. Registrant

Defendant next argues that the State failed to present evidence that CVS was a "registrant" under N.C. Gen. Stat. § 90-87(25). " 'Registrant' means [any legal entity] registered by the [Commission for Mental Health, Developmental Disabilities, and Substance Abuse Services] to manufacture, distribute, or dispense any controlled substance as required by this Article." N.C. Gen. Stat. § 90-87(3a), (20), (25) (2019).

At trial, two witnesses testified that CVS was a "registrant." During the State's direct examination of Dr. Kaskie, the following colloquy occurred:

> [THE STATE]: Is CVS Pharmacy, Incorporated, a registrant of any boards or commissions?
>
> [DR. KASKIE]: Yes.
>
> [THE STATE]: And do you know which?
>
> [DR. KASKIE]: They register with both the State, so the North Carolina Board of Pharmacy, and also the DEA.
>
> [THE STATE]: And what does that mean that they are a registrant of any of these boards or commissions?
>
> [DR. KASKIE]: Those boards are responsible for making sure that things are in check, such as the amounts and limits of certain medications and substances that are dispensed through the course of time. They make sure those things are not in excess.
>
> [THE STATE]: Does that registration with those boards and the DEA enable or authorize CVS to dispense prescription medication?
>
> [DR. KASKIE]: Yes, they do.

Further, during the State's direct examination of Ms. Yolanda Smith, a CVS pharmacy technician, the following exchange occurred:

> [THE STATE]: And do you know whether CVS is a registrant that is authorized by law to dispense medications?
>
> [SMITH]: Yes, ma'am.

Although the testimony presented at trial did not clearly identify CVS as a "registrant" of the Commission for Mental Health, Developmental Disabilities, and Substance Abuse Services under N.C. Gen. Stat. § 90-87(25), when taken as a whole and in the light most favorable to the State, there was "more than a scintilla of competent evidence" which would permit a reasonable juror to conclude that CVS is an entity that is registered and authorized to distribute or dispense controlled substances. *See State v. Johnson*, No. COA16-509, 2016 WL 7100632, at *7 (N.C. Ct. App. Dec. 6, 2016) (unpublished) (finding the VA a practitioner because sufficient evidence was presented tending to show the VA was a federally funded hospital capable of dispensing or administering controlled substances).

Accordingly, when viewed in the light most favorable to the State, there was more than a scintilla of competent evidence which "permits a reasonable inference that Defendant" committed embezzlement of a controlled substance by an employee of a registrant or practitioner pursuant to N.C. Gen. Stat. § 90-108(a)(14). Therefore, the trial court did not err in denying Defendant's motion to dismiss.

II. Jury Instructions

Defendant concedes that she failed to object to the jury instructions and that she did not request an instruction on the statutory definition of "registrant." However, Defendant argues that the trial court committed plain error by not instructing the jury on the statutory definition of "registrant." We disagree.

> For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice – that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty. Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affects the fairness, integrity or public reputation of judicial proceedings.

*Reaves-Smith*, ___ N.C. App. at ___, 844 S.E.2d at 26 (quoting *State v. Lawrence*, 365 N.C. 506, 516-17, 723 S.E.2d 326, 334 (2012)).

"In instructing the jury, it is well settled that the trial court has the duty to declare and explain the law arising on the evidence relating to each substantial feature of the case." *Id.* at ___, 844 S.E.2d at 26 (citation and quotation marks omitted). "[I]t is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court." *Lawrence*, 365 N.C. at 517, 723 S.E.2d at 333 (citation and quotation marks omitted).

Here, the trial court instructed the jury on embezzlement of a controlled substance by an employee of a registrant or practitioner as follows:

> The defendant has been charged with embezzlement of a controlled substance by an employee of a registrant or a practitioner, which occurs when an employee of a registrant, CVS Pharmacy, Incorporated, which is an entity capable of owning property, intentionally, fraudulently and dishonestly misapplies or diverts a Schedule II controlled substance to an unauthorized or illegal use.

> For you to find the defendant guilty of this offense, the State must prove three things beyond a reasonable doubt. First, that the defendant was an employee of a registrant, CVS Pharmacy, Incorporated, an entity capable of owning property. . . .

Even if we assume the trial court erred in its instruction to the jury, Defendant has failed to show that the "error had a probable impact on the jury's finding that the defendant was guilty." *Reaves-Smith*, ___ N.C. App. at ___, 844 S.E.2d at 26 (citation omitted). In fact, the trial court's instruction mirrored the statutory language of N.C. Gen. Stat. § 90-108(a)(14). Specifically, the instruction provided that the State must prove CVS was a "registrant" beyond a reasonable doubt. Further, the testimony of Dr. Kaskie and Ms. Smith provided sufficient evidence that CVS was a registrant of the State of North Carolina and was authorized to fill and deliver prescriptions. Thus, Defendant cannot show that the trial court's alleged error prejudiced Defendant. Moreover, Defendant has failed to demonstrate that this is the exceptional case in which the purported error "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* at ___, 844 S.E.2d at 26 (quoting *Lawrence*, 365 N.C. at 516-17, 723 S.E.2d at 334). Accordingly, Defendant's argument is overruled.

## Conclusion

For the reasons stated herein, the trial court did not err when it denied Defendant's motion to dismiss, and Defendant has failed to demonstrate plain error in trial court's instructions to the jury.

NO ERROR.

Judge ZACHARY concurs.

Judge BROOK dissents in separate opinion.

BROOK, Judge, dissenting.

I respectfully dissent. Because I would conclude that there was insufficient evidence that Defendant embezzled oxycodone under N.C. Gen. Stat. § 90-108(a)(14), as the State charged, I would hold the trial court erred in denying Defendant's motion to dismiss for insufficient evidence and reverse Defendant's conviction.

## I. Background

### A. Factual Background

On 16 April 2016, Defendant worked as a pharmacy technician at CVS pharmacy located at 5100 Beatties Ford Road in Charlotte, North Carolina. As a pharmacy technician, Defendant received and counted prescriptions, performed data entry, and assisted the pharmacist with other requests.

On that date, Defendant volunteered to work at the drive-through window at CVS. An unidentified man drove to the drive-through window, handed Defendant two prescriptions, both for oxycodone, a Schedule II medication, and a $100 bill. One prescription was filled out in the name of Pamela Crowe, but the other was incomplete except for the medication and dosage. The unidentified man asked Defendant to complete the blank prescription with another patient's information, William Thompson, and provided her with a date of birth. Defendant retrieved information regarding a customer in the CVS database named William Thompson and filled out the remainder of the prescription with that information. Defendant then initiated the process of filling the prescriptions. The man who provided Defendant with the

prescriptions and the $100 bill later returned to the drive-through to pick up the medications. She provided the unknown man with at least one and up to six prescriptions in this manner. Defendant later admitted to retrieving information regarding Pamela Crow in the CVS database and entering her information on a prescription as well.

At trial, the pharmacist who worked at that CVS location, Dr. Lauren Kaskie, testified regarding the process of filling a prescription. She testified that, upon receiving a written prescription from the patient, the pharmacy technician examines the prescription to ensure it includes (1) the patient's name, (2) the name of the medication, and (3) the prescribing doctor's signature. Then the technician enters the information from that prescription into the computer system to generate a label and bill the insurance company.

Dr. Kaskie also testified that different types of medications are classified according to the legal limitations on their prescription. She testified that "CI" or Class I medications "are illegal drugs in this country." "CII" or Class II medications, in contrast, can be obtained via a prescription but "are the second highest class of controlled substance [with] the most potential for abuse and misuse and are a lot of times [obtained] illegally because of potential street value." Class III, IV, and V medications "have much less of a chance [for abuse and misuse] as you step down the ranks[.]" The process for filling a prescription differs depending on the classification

level of the medication. When a customer presents with a prescription for a CIII, IV, or V medication, the pharmacy technician "retrieve[s] the medication from the shelf, count[s] it out, and pass[es] it to the pharmacist for final verification." However, pharmacy technicians do not have the authority to fill prescriptions for CII drugs. Dr. Kaskie testified that "in the case of a CII controlled substance, they print the label and then send it to the pharmacist who is the only person allowed to handle the CII narcotics." The pharmacist retrieves the CII medication from a locked safe and fills the prescription, and only the pharmacist possesses the code to enter the safe containing CII medications.

After a pharmacist has counted the pills for a CII medication prescription and placed the pills in a bottle, the pharmacist places the bottle in a bag, the bag is stapled shut with a prescription label, and the bagged medication is placed in a waiting bin. When a patient returns to collect the CII prescription, the technician requests the patient's name, date of birth, and identification, and then may hand the packaged medication to the patient.

Dr. Kaskie testified that she began to suspect illegal activity on 16 April 2016 when she noticed the CII prescriptions coming into the pharmacy were for high doses, and that they were in the names of regular customers whom she did not know to be prescribed controlled substances. She also noticed that one of the prescriptions was not billed to insurance, which she "considered a red flag for controlled substances."

When she noticed she had seen the same doctor's name on three or four prescriptions for controlled substances throughout the day, she "became suspicious of the legitimacy of the prescriptions" and ceased to fill them. Defendant ultimately admitted to this conduct and that her conduct violated CVS policy.

## B. Procedural History

A Mecklenburg County grand jury indicted Defendant by a superseding indictment on 2 April 2018 for "embezzlement of a controlled substance by employee of a registrant or practicner [sic]" under N.C. Gen. Stat. § 90-108(a)(14). The indictment reads as follows:

> THE JURORS FOR THE STATE UPON THEIR OATH PRESENT that on or about the 16th day of April, 2016, in Mecklenburg County, [Defendant] unlawfully, willfully and feloniously did as an employee of a registrant, CVS Heath [sic] Corp., a corporation, doing business as CVS Pharmacy, a legal entity capable of owning property, and who had access to controlled substances by virtue of her employment, embezzle and fraudulently, knowingly, and willfully misapply and divert to an unauthorized or illegal use, Oxycodone . . . in that the defendant accessed the patient profile system to obtain and enter biographical information of a patient on to a prescription that lacked patient information. The defendant then filled the prescription in return for $100.00 which the defendant used for personal use. At the time the defendant . . . was the agent and employee of CVS Heath [sic] and in that capacity had been entrusted to receive the property described above and in that capacity the defendant did receive and take into her care and possession that property.

Defendant was tried at the 6 May 2019 Criminal Session of the Superior Court in Mecklenburg County before the Honorable Karen Eady-Williams. At the close of

the State's evidence, Defendant made global motions to dismiss based on insufficient evidence and fatal variances between the allegations in the indictment and the evidence presented at trial. She renewed these motions after declining to present evidence for the defense.

The jury found Defendant guilty of "embezzlement of a controlled substance by an employee" on 10 May 2019. The trial court entered judgment on the jury's verdict and sentenced her to eight to nineteen months of active imprisonment, suspended for 18 months of supervised probation. Defendant entered notice of appeal in open court.

## II. Standard of Review

"The denial of a motion to dismiss for insufficient evidence is a question of law[ ] which this Court reviews *de novo*[.]" *State v. Bagley*, 183 N.C. App. 514, 523, 644 S.E.2d 615, 621 (2007) (internal citations omitted). "Under a *de novo* review, th[is C]ourt considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632-33, 669 S.E.2d 290, 294 (2008) (internal marks and citation omitted).

## III. Analysis

I agree with the majority that Defendant's conduct falls within the broad reach of N.C. Gen. Stat. § 90-108(a)(14) because the evidence at trial established that she had "access to controlled substances by virtue of [her] employment" and that she "fraudulently or knowingly and willfully misappl[ied] or divert[ed] to . . . her own use

or other unauthorized or illegal use" oxycodone. N.C. Gen. Stat. § 90-108(a)(14) (2019).

However, the State did not charge her with *only* having misapplied or diverted the oxycodone; the State charged her with having "embezzle[d] *and* fraudulently, knowingly, and willfully misappl[ied] and divert[ed] to an unauthorized or illegal use, Oxycodone[.]" (Emphasis added.) In other words, whereas the statute at issue requires that a defendant have "embezzle[d] *or* fraudulently or knowingly and willfully misappl[ied] or divert[ed]" a controlled substance, *id.* (emphasis added), the State took it upon itself to charge Defendant with having both embezzled *and* misapplied or diverted oxycodone. And because the State did not establish that Defendant both diverted the oxycodone *and* that she embezzled it, I respectfully dissent.

In reviewing a motion to dismiss for insufficient evidence, the trial court must determine

> whether there is substantial evidence of each essential element of the crime and that the defendant is the perpetrator. Substantial evidence is that amount of relevant evidence necessary to persuade a rational juror to accept a conclusion. In deciding whether substantial evidence exists[, t]he evidence is to be considered in the light most favorable to the State; the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom; contradictions and discrepancies are for the jury to resolve and do not warrant dismissal; and all of the evidence actually admitted, whether competent or incompetent, which is favorable to

the State is to be considered by the court in ruling on the motion.

*State v. Hill*, 365 N.C. 273, 275, 715 S.E.2d 841, 842-43 (2011) (internal marks and citations omitted).

Additionally, "[t]he Due Process Clause of the United States Constitution requires that the sufficiency of the evidence to support a conviction be reviewed with respect to the theory of guilt upon which the jury was instructed." *State v. Wilson*, 345 N.C. 119, 123, 478 S.E.2d 507, 510 (1996) (citing *Presnell v. Georgia*, 439 U.S. 14, 16, 99 S. Ct. 235, 236-37, 58 L. Ed. 2d 207, 211 (1978)). Indeed, "[i]t is a rule of universal observance in the administration of criminal law that a defendant must be convicted, if convicted at all, of the particular offense charged in the bill of indictment. The allegation and proof must correspond." *State v. Jackson*, 218 N.C. 373, 376, 11 S.E.2d 149, 151 (1940). Where there is "[a] variance between the criminal offense charged and the offense established by the evidence[,]" the State has "in essence [ ] fail[ed] . . . to establish the offense charged." *State v. Waddell*, 279 N.C. 442, 445, 183 S.E.2d 644, 646 (1971). A motion to dismiss based on a fatal variance

> is based on the assertion, not that there is no proof of a crime having been committed, but that there is none which tends to prove that the particular offense charged in the bill has been committed. In other words, the proof does not fit the allegation, and therefore leaves the latter without any evidence to sustain it. It challenges the right of the State to a verdict upon its own showing, and asks that the court, without submitting the case to the jury, decide, as matter of law, that the state has failed in its proof.

*State v. Law*, 227 N.C. 103, 104, 40 S.E.2d 699, 700 (1946) (citation omitted).

Particularly pertinent to the case in controversy, in *State v. Campbell*, 257 N.C. App. 739, 810 S.E.2d 803 (2018), *aff'd as modified*, 373 N.C. 216, 835 S.E.2d 844 (2019), our Court held that an indictment charging the defendant with larceny of property belonging to a pastor and a church fatally varied from the evidence adduced at trial, which tended to show that only the church owned the property. 257 N.C. App. at 766, 810 S.E.2d at 819.

The key question in this appeal is whether the conduct proved by the State supports the conduct charged by the indictment. Defendant was charged by indictment under N.C. Gen. Stat. § 90-108(a)(14) for "embezzlement of a controlled substance by employee of a registrant or practioner [sic]." The relevant portions of the indictment state, "[Defendant] unlawfully, willfully and feloniously did as an employee of a registrant, . . . CVS Pharmacy, . . . and who had access to controlled substances by virtue of her employment, embezzle and fraudulently, knowingly, and willfully misapply and divert to an unauthorized or illegal use, Oxycodone." Therefore, in order to survive a motion to dismiss, the State must have offered sufficient evidence to prove that Defendant (1) had access to controlled substances by virtue of her employment; that she (2) unlawfully, willfully and feloniously embezzled oxycodone; and that she (3) fraudulently, knowingly, and willfully misapplied and diverted oxycodone to an unauthorized or illegal use. *See Jackson*, 218 N.C. at 376,

11 S.E.2d at 151 ("It is a rule of universal observance in the administration of criminal law that a defendant must be convicted, if convicted at all, of the particular offense charged in the bill of indictment. The allegation and proof must correspond."). Defendant does not dispute that the State offered sufficient evidence of elements (1) and (3) above. Instead, she argues that her motion to dismiss should have been granted because the State charged her with having embezzled the oxycodone but failed to introduce any evidence of embezzlement, only of fraudulent, willful, or knowing misapplication or diversion.

Determining whether the State offered sufficient evidence of embezzlement thus turns on what that term means in the statute at issue. The State argues that "to embezzle" under § 90-108(a)(14) means something different than our appellate courts have interpreted it to mean in the context of § 14-90, the "traditional" embezzlement statute. The State argues that § 90-108(a)(14)

> is clearly worded in the disjunctive to cover both employees with authorized possession and employees like defendant with mere access. . . . The fact that the General Assembly chose to include not only employees with authorized possession but those with mere access within N.C. Gen. Stat. § 90-108(a)(14) is clear intent to broaden its application beyond that of traditional embezzlement.

Defendant contends that § 90-108(a)(14), "as written, appears to create *multiple* offenses, one of which is embezzlement[,]" and that our case law's "traditional" definition of embezzlement applies to § 90-108(a)(14).

In statutory interpretation, "[t]he beginning point is the relevant statutory text." *United States v. Quality Stores, Inc.*, 572 U.S. 141, 145, 134 S. Ct. 1395, 1399, 188 L. Ed. 2d 413, 419 (2014). The relevant language of N.C. Gen. Stat. § 90-108(a) is as follows:

> It shall be unlawful for any person . . . [w]ho is . . . an employee of a registrant or practitioner and who is authorized to possess controlled substances or has access to controlled substances by virtue of employment, to embezzle or fraudulently or knowingly and willfully misapply or divert to his or her own use or other unauthorized or illegal use or to take, make away with or secrete, with intent to embezzle or fraudulently or knowingly and willfully misapply or divert to his or her own use or other unauthorized or illegal use any controlled substance which shall have come into his or her possession or under his or her care.

N.C. Gen. Stat. § 90-108(a)(14) (2019). In determining the plain meaning of a statute, "we give every word of the statute effect, presuming that the legislature carefully chose each word used." *N.C. Dep't of Corr. v. N.C. Med. Bd.*, 363 N.C. 189, 201, 675 S.E.2d 641, 649 (2009).

Moreover, the prior construction canon applies here, and it states that "when judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute is presumed to incorporate that interpretation." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 330, 135 S. Ct. 1378, 1386, 191 L. Ed. 2d 471, 480 (2015) (internal marks and citation omitted). Relatedly, "it is always presumed that the Legislature acted with full knowledge of

prior and existing law." *Ridge Cmty. Inv'rs, Inc. v. Berry*, 293 N.C. 688, 695, 239 S.E.2d 566, 570 (1977). "Where the text permits[,]" the Legislature's "enactments should be construed to be consistent with one another." *Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp.*, 561 U.S. 89, 108, 130 S. Ct. 2433, 2447, 177 L. Ed. 2d 424, 442 (2010).

Applying the above rules of statutory interpretation makes plain Defendant's conduct does not constitute embezzlement pursuant to § 90-108(a)(14).

The majority opinion does not address the State's argument that Defendant's conduct constitutes embezzlement in this context and instead concludes that Defendant's motion to dismiss was properly denied because the State proved that Defendant had "access to [controlled substances] by virtue of her employment" and that she misapplied or diverted a controlled substance for an unauthorized or illegal use. This reasoning ignores the fact that the State charged Defendant with embezzlement. In so doing, the majority implicitly reads the statute's "to embezzle" as covering the same conduct as to "fraudulently or knowingly and willfully misapply or divert to his or her own use or other unauthorized or illegal use[.]" N.C. Gen. Stat. § 90-108(a)(14) (2019). But this impermissibly renders the "to embezzle" language superfluous in contravention of the requirement that we give each word in the statute meaning. *See N.C. Dep't of Corr.*, 363 N.C. at 201, 675 S.E.2d at 649.

The State's argument, that the language of § 90-108(a)(14) changes the meaning of "to embezzle," presents a somewhat closer question than the interpretation put forward by the majority[1] but must meet a similar fate. Returning to the pertinent portions of the statutory text, it merits mention that the statute's provisions describe *to whom* the statute applies and *what* conduct it covers. The who: "any person . . . who is authorized to possess controlled substances or has access to controlled substances by virtue of employment[.]" N.C. Gen. Stat. § 90-108(a)(14) (2019). The what: "to embezzle or fraudulently or knowingly and willfully misapply or divert to his own use or other unauthorized or illegal use[.]" *Id.* As Defendant notes in her brief, "[t]he statute, as written, appears to create *multiple* offenses, one of which is embezzlement." It also criminalizes, for example, secreting controlled substances with the intent to take them later, as well as "tak[ing or] mak[ing] away with . . . any controlled substance[.]" *Id.* As noted above, however, the State must establish embezzlement *and* fraudulent or knowing misapplication or diversion when it charges both offenses. The crux of the State's argument is that the "who" language—including those with "access" under the broad reach of the statute—changes the meaning of the "what" language—"embezzle[ment]."

---

[1] Tellingly, the State does not make the argument adopted by the majority.

Our courts have long settled the meaning of embezzlement, including in interpreting § 14-90(b), the pertinent language of which also appears in § 90-108(a)(14). Section 14-90(b) reads in relevant part as follows:

> Any person who shall: (1) **Embezzle or fraudulently or knowingly and willfully misapply or convert to his own use**, or (2) Take, make away with or secrete, with intent to embezzle or fraudulently or knowingly and willfully misapply or convert to his own use, any money, goods or other chattels, . . . shall be guilty of a felony.

N.C. Gen. Stat. § 14-90 (2019) (emphasis added). Nearly identically, § 90-108(a)(14) states in relevant part that it is unlawful for any person who is an employee of a registrant or practitioner and has access to controlled substances

> **to embezzle or fraudulently or knowingly and willfully misapply or divert to his or her own use** or other unauthorized or illegal use or to take, make away with or secrete, with intent to embezzle or fraudulently or knowingly and willfully misapply or divert to his or her own use or other unauthorized or illegal use any controlled substance[.]

*Id.* § 90-108(a)(14) (emphasis added). Because the relevant language regarding what conduct the statutes proscribe is identical, we turn to our case law interpreting "embezzle" under § 14-90 for guidance regarding the term's meaning in § 90-108(a)(14). A review of this case law seriously undermines the State's argument as our appellate courts have long drawn a distinction between mere access to property and the rightful possession that is a necessary component of embezzlement.

In *State v. Weaver*, 359 N.C. 246, 607 S.E.2d 599 (2005), our Supreme Court addressed the issue of whether the defendant committed embezzlement when she, an administrative employee, "took a corporate signature stamp without permission and wrote unauthorized corporate checks, thereby misappropriating funds from her employer." *Id.* at 247, 607 S.E.2d at 599. Because "the employee did not lawfully possess or control the misappropriated funds[,]" the Supreme Court concluded that the State did not satisfy "the lawful possession or control element of the crime of embezzlement" and affirmed the decision of the Court of Appeals which reversed the defendant's convictions. *Id.* The Supreme Court considered that the defendant did not have authority to use her employer's signature stamp or to write checks from the business's accounts without the express authorization of her employer on a case-by-case basis. *Id.* at 256, 607 S.E.2d at 605. First, the Court noted that "[h]istorically, since the General Assembly codified the criminal offense of embezzlement in North Carolina, the criminal act has hinged on a defendant's misappropriation of property in his/her lawful possession or care due to employment or fiduciary capacity." *Id.* Interpreting the defendant's conduct in the context of the embezzlement statute, the Supreme Court concluded as follows:

> While [the defendant] had *access* to the checks and signature stamp by virtue of her status as an employee at R&D and International Color, we cannot say, based on these facts, that [the defendant]'s possession of this property was *lawful*[,] nor are we persuaded that this property was under [the defendant]'s care and control as

> required by N.C.G.S. § 14-90. Because [the defendant] never lawfully "possessed" the misappropriated funds and because the funds were not "under her care" we conclude that [the defendant] did not commit the crime of embezzlement as defined in N.C.G.S. § 14-90.

*Id.* (alterations omitted). In short, despite the fact that the defendant had access to the funds, "[b]ecause her possession [of the misappropriated funds], if any, was not lawful, the crime of embezzlement has not occurred." *Id.* at 259, 607 S.E.2d at 607 (citing *State v. Speckman*, 326 N.C. 576, 578, 391 S.E.2d 165, 166 (1990) ("This Court has held that to constitute embezzlement, the property in question initially must be acquired lawfully, pursuant to a trust relationship, and then wrongfully converted.")).

Where a defendant obtains property "by a trick or fraudulent device[,]" and where it is "only by this trick or fraudulent device that the taking was accomplished," he is not guilty of embezzlement but of obtaining property by false pretenses or "larceny by trick." *State v. Griffin*, 239 N.C. 41, 45, 79 S.E.2d 230, 233 (1953); *see also State v. Keyes*, 64 N.C. App. 529, 532, 307 S.E.2d 820, 822-23 (1983) ("There is a difference between having *access* to property and possessing property in a fiduciary capacity. Embezzlement is the fraudulent conversion of property by one who has *lawfully* acquired possession of it for the use and benefit of the owner, i.e., in a fiduciary capacity. Larceny is the fraudulent conversion of property by one who has acquired possession of it by trespass.") (emphasis added). In contrast to embezzlement, "to constitute false pretenses the property must be acquired unlawfully at the outset, pursuant to a false representation." *Speckman*, 326 N.C. at

578, 391 S.E.2d at 166. "The fact that a defendant is an employee of a business does not change theft of goods from larceny to embezzlement if the defendant never had lawful possession of the property." *Keyes*, 64 N.C. App. at 532, 307 S.E.2d at 823.

This case law makes three things plain, each of which calls the State's argument here further and further into doubt. First, there is a settled meaning of embezzlement in our case law, creating a presumption that it is used in the same sense in § 90-108(a)(14). *See Armstrong*, 575 U.S. at 330, 135 S. Ct. at 1386. Second, that settled meaning centers around misappropriation of something lawfully possessed. *Weaver*, 359 N.C. at 247, 607 S.E.2d at 599. Third, access to property does not determine whether it is lawfully possessed. *Id.*

Moreover, and echoing the central failing of the majority opinion, adopting the State's capacious interpretation of embezzlement in this context renders the "fraudulently . . . misapply" language that follows it superfluous. Put another way, if "to embezzle" is unmoored from lawful possession as the State suggests, the statute need not also prohibit fraudulent misapplication.

All this being said, I think the best reading of § 90-108(a)(14) is that it uses the concept of embezzlement in the traditional sense and, as a consequence, the State cannot prevail here. Though the State referred to Defendant's conduct as "embezzlement" in the indictment, in its opening statement, in its closing argument, and in the jury instructions, Defendant did not embezzle oxycodone because she did

not obtain it lawfully. Instead, she obtained it by "trick or fraudulent device[,]" i.e., fraudulent prescriptions. *Griffin*, 239 N.C. at 45, 79 S.E.2d at 233. Dr. Kaskie testified that "the filling of that prescription was done . . . fraudulently," and that "if [she] had known that this was a fraudulent prescription, the drugs would never have been filled[.]" The CVS loss prevention manager testified that "CVS policy and rules [do not] allow for a pharmacy technician to have access to Schedule II drugs" and that, but for the "fraudulent prescriptions," "those drugs would not [have] exit[ed] the safe[.]" This case is thus similar to *Weaver*, in which the defendant "took a corporate signature stamp without permission and wrote unauthorized corporate checks, thereby misappropriating funds from her employer." 359 N.C. at 247, 607 S.E.2d at 599. Here, Defendant took patient information from the patient portal without permission and wrote unauthorized and fraudulent prescriptions, thereby misappropriating oxycodone from her employer. Just as our Supreme Court concluded in *Weaver*, that conduct cannot constitute embezzlement. *Id.* at 256, 607 S.E.2d at 605.

The State took it upon itself to prove embezzlement, a burden it could not bear in the current controversy. Accordingly, I would conclude that Defendant's motion to dismiss for insufficient evidence was improperly denied.

IV. Conclusion

*BROOK, J., dissenting*

Because I would reverse Defendant's conviction for embezzlement, I would not reach the additional issues, namely whether the State proved CVS is a "registrant" as defined by N.C. Gen. Stat. § 90-108(a)(14) or whether the trial court erred by failing to instruct the jury on the statutory definition of the term "registrant."